Fred P. GARDNER, Claimant–Appellee,

v.

Jesse BROWN, Secretary of Veterans
Affairs, Respondent–Appellant.

No. 92–7025.

United States Court of Appeals,
Federal Circuit.

Sept. 13, 1993.

Joseph M. Hannon, Jr., Thompson, O'Don-
nell, Markham, Norton & Hannon, Washing-
ton, DC, argued for claimant-appellee.

Julie A. Shubin, Atty., Commercial Litiga-
tion Branch, Dept. of Justice, Washington,
DC, argued for respondent-appellant. With
her on the brief were Stuart M. Gerson, Asst.
Atty. Gen., David M. Cohen, Director and
Mary Mitchelson, Deputy Director. Also on
the brief were Donald E. Zeglin and Tresa
Schlecht, Dept. of Veterans Affairs, Washing-
ton, DC, of counsel.

Before ARCHER, MICHEL, and LOURIE, Circuit Judges.

ARCHER, Circuit Judge.

The Secretary of Veterans Affairs appeals from a judgment of the United States Court of Veterans Appeals (Veterans Court), No. 90–120 (entered Jan. 13, 1992). The Veterans Court reversed the decision of the Board of Veterans' Appeals holding that Gardner is not entitled to disability compensation, and remanded the case for further proceedings. 1 Vet.App. 584. We affirm.

## I.

Fred P. Gardner, a veteran of the Korean conflict, underwent back surgery at a Department of Veterans Affairs (VA)[1] medical facility for a non-service-connected back condition. He asserts that as the result of the surgery he developed severe nerve damage in his left leg, resulting in pain, atrophy, and weakness, and that since the surgery his left ankle is severely impaired requiring him to wear a leg brace. Accordingly, Gardner filed a claim for disability compensation with the VA Regional Office in Waco, Texas.

The VA Regional Office denied Gardner's claim, and he sought review by the Board of Veterans' Appeals (BVA). The BVA held that in order for a veteran to receive disability compensation for an injury resulting from VA medical treatment under 38 U.S.C. § 1151 (Supp. III 1991) (formerly § 351[2]) and 38 C.F.R. § 3.358 (1992),[3]

> at least two elements must be present. First, there must be some demonstration in the record that the treatment rendered resulted in some untoward result or that the treatment was negligent or showed error in judgment, lack of proper medical

skill or some other instance of indicated fault. Second, it must be shown that, as a result of the aforementioned accident, negligence, etcetera there was additional disability.

The BVA concluded that Gardner was not entitled to disability compensation, finding that he did not prove that he suffered injury as the result of negligent treatment or an accident occurring during his treatment. Gardner appealed the decision of the BVA to the Court of Veterans Appeals.

The Veterans Court held that 38 C.F.R. § 3.358(c)(3) impermissibly imposed a fault or accident requirement in addition to the prerequisites for relief set out in 38 U.S.C. § 1151. The court reasoned that the plain language of the statute lacked a fault or accident element, that the legislative history was ambiguous as to fault or accident, that Congressional reenactment of the statute while the regulation was in force was not Congressional ratification of a fault or accident element, and that no deference was owed the VA's interpretation. The Veterans Court struck down 38 C.F.R. § 3.358(c)(3) as contrary to 38 U.S.C. § 1151 and beyond the authority of the VA.[4] The Veterans Court therefore reversed the BVA's decision denying Gardner compensation and remanded for a redetermination of eligibility.

The Secretary appeals from this decision.

## II.

■ The sole issue presented in this appeal is whether the regulation, 38 C.F.R. § 3.358(c)(3), which requires a veteran to prove that he suffered disability as the result of negligent treatment or an accident occurring during treatment, is an invalid imple-

---

1. For simplicity, we refer to the Department of Veterans Affairs and its precursors, the Veterans' Administration and the Veterans' Bureau, as the "VA."

2. The Department of Veterans Affairs Health–Care Personnel Act of 1991, Pub.L. No. 102–40, § 402(b)(1), 105 Stat. 187, 238, and the Department of Veterans Affairs Codification Act, Pub.L. No. 102–83, § 5, 105 Stat. 378, 406 (1991), redesignated most of the sections of Title 38, United States Code, so that the first two digits of the section number correspond to the section's re-

spective chapter number. To avoid confusion we cite the current sections.

3. The BVA is bound by the regulations of the VA. 38 U.S.C. § 7104(c) (Supp. III 1991).

4. 38 U.S.C. § 7261(a)(3)(C) (Supp. III 1991) requires the Court of Veterans Appeals to "hold unlawful and set aside ... regulations issued or adopted by the Secretary ... found to be ... in excess of statutory ... authority, ... or in violation of a statutory right."

mentation of 38 U.S.C. § 1151.[5] The resolution of this question depends on the construction of 38 U.S.C. § 1151, which is a matter of law that we review *de novo.* 38 U.S.C. § 7292(d)(1) (Supp. III 1991); *Prenzler v. Derwinski,* 928 F.2d 392, 393 (Fed.Cir.1991).

### A.

"The starting point in interpreting a statute is its language, for 'if the intent of Congress is clear, that is the end of the matter.'" *Good Samaritan Hosp. v. Shalala,* —— U.S. ——, ——, 113 S.Ct. 2151, 2157, 124 L.Ed.2d 368 (1993) (alteration omitted) (quoting *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984)).

The statute at issue in this case, 38 U.S.C. § 1151, provides for compensation to veterans who are disabled by VA medical treatment or examination or vocational training. It states in pertinent part:

> Where any veteran shall have suffered an injury, or an aggravation of an injury, as the result of hospitalization, medical or surgical treatment, or the pursuit of a course of vocational rehabilitation ..., awarded under any of the laws administered by the Secretary, or as a result of having submitted to an examination under any such law, and not the result of such veteran's own willful misconduct, and such injury or aggravation results in additional disability to or the death of such veteran, disability or death compensation under this chapter ... shall be awarded in the same manner as if such disability, aggravation, or death were service-connected.

38 U.S.C. § 1151.

The interpretation of the statute asserted by the VA appears at 38 C.F.R. § 3.358 (1992). The regulation provides that a veteran must prove he suffered a disability, disease, or injury, or aggravation thereof, as the result of a specified VA service, and not merely coincidental with it. 38 C.F.R. § 3.358(c)(1). Furthermore, the VA will not pay compensation for "the continuance or

natural progress" of a disease or injury treated by the VA. *Id.* § 3.358(b)(2). But the provision of the regulation at issue in this appeal and struck down by the Veterans Court requires the veteran to prove additionally that the VA treatment was faulty or that an accident occurred during treatment:

> Compensation is not payable for either the contemplated or foreseeable after results of approved medical or surgical care properly administered, no matter how remote, in the absence of a showing that additional disability or death proximately resulted through carelessness, negligence, lack of proper skill, error in judgment, or similar instances of indicated fault on the part of the Department of Veterans Affairs. However, compensation is payable in the event of the occurrence of an "accident" (an unforeseen, untoward event), causing additional disability or death proximately resulting from Department of Veterans Affairs hospitalization or medical or surgical care.

38 C.F.R. § 3.358(c)(3).

Unlike the regulation, the statute does not on its face include an element of VA fault or accident as a condition to compensation. Pursuant to 38 U.S.C. § 1151, the VA "shall" award service-connected compensation where a veteran shows he has suffered an "injury, or an aggravation of an injury" and that this injury or aggravation is the result of one of four VA services: (1) hospitalization; (2) medical or surgical treatment; (3) vocational rehabilitation; or (4) an examination.

The statute has two limitations to the mandatory grant of disability compensation to a veteran undergoing one of the four services listed above. First, the injury or aggravation of injury must be "the result of" one of the services. Second, the injury or aggravation of injury must *not* be "the result of" the veteran's own willful misconduct. The statute does not expressly require the veteran to prove the poor nature or lack of quality of the treatment received, or the occurrence of some mishap during treatment. Rather, compensation must be paid where the veter-

---

**5.** In the appeal to this court, no challenge can be made to the factual determinations that Gardner did not show that the VA treatment was negligent or that an accident occurred during treatment so as to satisfy the VA's regulation. 38 U.S.C. § 7292(d)(2) (Supp. III 1991).

an proves only that he suffered an injury as the result of a specified treatment and not as the result of his own willful misconduct.

The Secretary argues that the statutory language "as the result of" is ambiguous because the statute "fails to define or explain, in any manner, what is meant by the words 'as the result of.'" From this the Secretary reasons, it is likely that "Congress, as evidenced by the legislative history of the statute, intended that the VA limit compensation payments to those veterans with disabilities proximately caused by VA fault or through accidents."

We reject, however, the Secretary's premise—that the statutory language must be deemed ambiguous because the statute does not contain an express definition of the words at issue. To be sure, Congress may define terms in a statute. *E.g.,* 38 U.S.C. § 1101 (Supp. III 1991). But Congress is not required to define each and every word in a piece of legislation in order to express clearly its will. A phrase appearing in the context of a statute may be unambiguous where it "has a clearly accepted meaning in both legislative and judicial practice," *West Virginia Univ. Hosps., Inc. v. Casey,* 499 U.S. 83, 98, 111 S.Ct. 1138, 1147, 113 L.Ed.2d 68 (1991), even though it is not explicitly defined by the statutory text. Indeed, terms are defined in statutes often for the very reason that such terms would be ambiguous without a statutory definition. That a term is not defined in a statute does not mean that the term is *per se* ambiguous.

We are convinced that "as the result of" as used in 38 U.S.C. § 1151 mandates only a causation requirement. *See Webster's Third New Int'l Dictionary* 1937 (1971) (defining "result" as "a consequence, effect, issue, or conclusion"). Under section 1151 the specified treatment must *cause* the injury or the aggravation of injury. And willful misconduct of the veteran may not be a cause of the injury or aggravation.

The Secretary tenuously argues that causation in this instance may be defined as fault. Causation and fault however are fundamental, distinct concepts in the law. *See generally* William L. Prosser, *Handbook of the Law of Torts* §§ 30, 37, 45, 46, 48 (1941).

Congress knows how to legislate expressly liability for fault and negligence. *E.g.,* Act of Apr. 22, 1908, ch. 149, 35 Stat. 65 (liability of common carriers by railroad in cases of negligence) (codified as amended at 45 U.S.C. § 51 (1988)). Congress also knows how to legislate liability without fault. *E.g.,* Longshoremen's and Harbor Workers' Compensation Act, ch. 509, 44 Stat. 1424 (1927) (codified as amended at 33 U.S.C. §§ 901–950 (1988)). Moreover, section 1151 itself includes one culpability element: the injury or aggravation must not be the result of the *willful misconduct* of the *veteran.* Under this language the veteran's own negligence will not preclude him from receiving compensation. When section 1151 is read in its entirety it becomes evident that Congress's failure in section 1151 to require expressly the veteran to prove fault or accident occurring during treatment was both informed and intentional.

Finally, the VA's argument that causation incorporates fault or accident is belied by the facts that the BVA in its decision below could and did cleanly distinguish "two elements" for compensation—causation and fault or accident—and that the VA regulation 38 C.F.R. § 3.358 has causation considerations separate from the fault or accident requirement.

We therefore conclude that the Veterans Court correctly held that 38 U.S.C. § 1151 unambiguously does not require the veteran to prove that the VA treatment was faulty or that an accident occurred during the treatment.

#### B.

As noted above, the Secretary argues that from the legislative history it is likely that Congress intended a fault or accident element. Although "[r]ecourse to the legislative history of [section 1151] is unnecessary in light of the plain meaning of the statutory text," *Darby v. Cisneros,* —— U.S. ——, ——, 113 S.Ct. 2539, 2545, 125 L.Ed.2d 113 (1993), we may look to the legislative history "'to determine whether there is a *clearly expressed* legislative intention contrary to the statutory language,'" *Glaxo Operations UK Ltd. v. Quigg,* 894 F.2d 392, 395

(Fed.Cir.1990) (quoting *Madison Galleries, Ltd. v. United States,* 870 F.2d 627, 629 (Fed.Cir.1989)). We emphasize that because the statutory language is clear, "we do not analyze th[e] history from a neutral viewpoint." *Id.* at 396. The Secretary must make an extraordinarily strong showing of clear legislative intent in order to convince us that Congress meant other than what it ultimately said. *See id.*

38 U.S.C. § 1151 has a long history. It was born in section 213 of the World War Veterans' Act, 1924, ch. 320, 43 Stat. 607, 623 (1924) ("1924 Act").[6] Prior to the 1924 Act, veterans could not be compensated for injuries sustained as a result of VA medical treatment because such treatment was not service-connected.

The legislation was proposed by General Frank T. Hines, then-director of the United States Veterans' Bureau, as an amendment to the "war risk insurance act." *See World War Veterans' Legislation: Hearings on H.R. 7320 Before the House Committee on World War Veterans' Legislation,* 68th Cong., 1st Sess. 113 (1924) (hereinafter "House Hearings"). Each party cites in support of its respective construction of the 1924 Act the House committee hearings on House Bill 7320, which was enacted as section 213. These hearings have been cited often by the VA in its administration of the Act. In introducing the proposal, General Hines stated:

[I]n cases of hospitalization for compensable diseases or injuries, where without fault of the patient, *as the result of accident or negligence of treatment or unskillfulness—things that must sometimes happen*—the patient is further injured or disabled, there is at present no provision for compensating him to the extent thereof. The Government having undertaken to bestow a benefit, has, in fact, inflicted a loss.

*House Hearings, supra,* at 113 (emphasis added).

General Hines and Members of Congress then attempted to flesh out situations in which compensation would be payable:

General HINES. . . . In the hospital, at the patient's consent, he may undergo a certain surgical operation, with the hope, on the best advice available, that it will overcome some disability, but instead of doing that it goes in the other direction. Now, he may have a considerable minor disability due to his service, but at the same time he finds himself totally disabled, and the bureau under the existing law has no way of compensating him.

The CHAIRMAN. It might come from a spinal puncture done at his request?

General HINES. That is true.

The CHAIRMAN. Or an operation which was not successful?

General HINES. That has occurred from a spinal puncture that I know of, and it seems to me manifestly unjust, that in good faith the man undergoes an operation, *the doctor does the best he can and without neglect*—

The CHAIRMAN. And with the best medical advice.

General HINES. With the best medical advice, *and still at the end of a certain period we find the man has a greater disability than he originally started with,* and we have no way of correcting in any measure that condition.

The CHAIRMAN. In a certain number of cases from some operations lesions will occur which will incapacitate the patient also?

General HINES. And it may result—as we all know, *operations are never certain*—in death.

. . . .

6. That section provided:

That where any beneficiary of this bureau suffers or has suffered an injury or an aggravation of an existing injury as the result of training; hospitalization, or medical or surgical treatment, awarded to him by the director and not the result of his misconduct, and such injury or aggravation of an existing injury results in additional disability to or the death of such beneficiary, the benefits of this title shall be awarded in the same manner as though such disability, aggravation, or the death was the result of military service during the World War.

World War Veterans' Act, 1924, ch. 320, § 213, 43 Stat. 607, 623 (1924).

Mr. RANKIN. Would the disability that they are being treated for have to rise to the dignity of being convincable? [sic] For instance, a great many fellows go to these hospitals to get examined and stay there a while until their case can be thoroughly examined. Suppose it was determined that they had no disability due to the service when they went there, but that they were injured in this process in some way, would this apply to them?

General HINES. *If they were injured*, for instance, in determining whether a man has or has not syphilis, *by a spinal puncture*—when they make the spinal puncture and get the results, they all seem to be satisfied whatever the result is—*if that results, as it might, that they would paralyze a man under that operation, under those circumstances that man would be entitled to compensation.*

*House Hearings, supra,* at 114 (emphasis added).

The record of House hearings also contains a letter from General Hines to the House committee, in which General Hines wrote:

I concur in the principle that authority should exist for compensating the cases of disability due to the hazards of training upon the general theory and principle of the *workmen's compensation act* [no-fault liability]. I would extend the principle beyond this particular proposal to include also ratable disabilities *incurred without fault and due to the hazards of medical and surgical treatment.*

*House Hearings, supra,* at 122 (emphasis added).

Finally, General Hines reiterated before the Senate what he had said before the House:

[A] man submitted to a spinal puncture in one of our hospitals, to determine whether his [service-connected] disability was due to misconduct or not, and as the result of the spinal puncture he was injured for a period, paralyzed practically, on one side, and he is claiming now that he is greatly disabled. There is no way for the bureau, even though *that mistake* was made by them, to in any way compensate him.

*Veterans' Bureau Codification Act: Hearings on S. 2257 Before the Subcommittee of the Senate Committee on Finance,* 68th Cong., 1st Sess. 102–03 (1924) (emphasis added).

Until 1926, the VA did not impose any fault or accident showing as a condition to compensation. In 1926, the VA promulgated Regulation No. 137 under the direction of General Hines. That regulation provided that "[c]ompensation ... will not be paid for the ordinary residuals of disease or injury following *accepted* medical treatment nor for the continuation of the original disability where improvement can not be effected by *approved* medical or surgical treatment." VA Regulation No. 137, sec. 7701 (1926) (emphasis added), *reprinted in* United States Veterans' Bureau, *Regulations and Procedure: Active and Obsolete Issues as of December 31, 1928,* at 174 (1930) (hereinafter "Obsolete Issues"). In 1927, the regulation was revised to exclude "[t]he usual after results of *approved* medical care and treatment *properly* administered." VA Regulation No. 167, sec. 7701.B(4) (1927) (emphasis added), *reprinted in Obsolete Issues, supra,* at 194.

Although the regulations used such language as "approved" and "properly administered" medical care, it does not appear that the VA actually excluded disability claims where the veteran could not prove fault or accident. For example, the Attorney General advised the VA that the phrase "as the result of" required a straightforward causal connection with no element of fault or accident on the part of VA personnel. *See* 35 Op. Att'y Gen. 76 (1926); 36 Op. Att'y Gen. 61, 63 (1929) ("It is probably impossible to state a general rule for determining whether such a causal connection is present in any given case."). In 1930, the Comptroller General considered the question whether a veteran who had suffered dermatitis as the result of X-ray treatment for service-connected tuberculosis could receive compensation. The Comptroller advised the Director of the Veterans' Bureau that such disability would be compensable; there was no discussion of the nature or quality of the specific X-ray treatments given. Comptroller General Decision

No. A–31895, 9 Comp.Gen. 515 (1930). Nevertheless, in language broader than necessary, the Comptroller General stated that "[t]he plain intent of section 213 ... was to afford veterans some measure of compensation in those cases in which the disability arises through accident, carelessness, negligence, lack of proper skill, error in judgment, etc., on the part of any person charged with a duty respecting the hospitalization, or medical or surgical treatment...." *Id.* at 516.

In 1933, Congress repealed the World War Veterans' Act. *See* Economy Act, ch. 3, § 17, 48 Stat. 8, 11 (1933). Thereafter, in March 1934, Congress substantially reenacted the provisions of the repealed law. Act of Mar. 28, 1934, ch. 102, § 31, 48 Stat. 509, 526 ("1934 Act").[7] The Congressional discussion preceding the enactment of the 1934 Act expressed the same commitment to compensation as that present in the discussion preceding the enactment of the 1924 Act:

> Mr. STEIWER. The first proposal is that where, in a veterans' hospital, a veteran is disabled by reason of mistreatment on the part of a Government agent, as in a case of malpractice by a Government surgeon, that disability shall be treated just the same as a war disability, and the veteran shall be compensated in the same way.
>
> Mr. BORAH. Are we undertaking to cover cases of malpractice upon the part of physicians?
>
> Mr. STEIWER. Incidentally, we would. Of course, what we are trying to do is to protect the men who suffer from malpractice at the hands of Veterans' Administra-

tion physicians. That was in the old law; it was repealed by the Economy Act; and the effort at this time is to restore it.

> ....
>
> Mr. BORAH. ... I am curious to know how it is provided that we shall determine that there has been a case of malpractice.
>
> Mr. STEIWER. Mr. President, I do not know that the Veterans' Administration can determine that there has been a case of malpractice, but they do determine that the veteran is suffering from disability, and in some cases they have determined that the disability was caused by or aggravated by some mistreatment upon the part of the veterans' agencies. I do not think there has ever been a trial of a [VA] doctor to determine malpractice....

78 Cong. Rec. 3289–90 (Feb. 27, 1934).

For the first time, in August 1934, the Administrator of the VA took the position that compensation was payable under the 1934 Act *only* where the disability arose through an accident or negligence. Department of Veterans Affairs, Precedential Op. Off. General Counsel 99–90, at 7 (1990). The Administrator based his interpretation of the 1934 Act on the fact that it was a reenactment of the 1924 Act, and that in 1930 the Comptroller General had stated that the 1924 Act was intended to compensate fault and accident. *Id.* From about 1934 to the present the VA has promulgated various regulations requiring fault or accident, culminating in the regulation at issue today. *See id.* at 7–8.[8]

---

**7.** That section stated:

Where any veteran suffers or has suffered an injury, or an aggravation of any existing injury, as the result of training, hospitalization, or medical or surgical treatment, awarded him under any of the laws granting monetary or other benefits to World War veterans, or as the result of having submitted to examination under authority of the War Risk Insurance Act or the World War Veterans' Act, 1924, as amended, and not the result of his misconduct, and such injury or aggravation results in additional disability to or the death of such veteran, ... benefits ... shall be awarded in the same manner as if such disability, aggravation, or death were service connected within the meaning of such laws....

Act of Mar. 28, 1934, ch. 102, § 31, 48 Stat. 509, 526.

**8.** The 1934 Act was amended several times, resulting in the present enactment, 38 U.S.C. § 1151; statutory language relevant to this appeal, however, was not changed. *See* Act of Oct. 17, 1940, ch. 893, § 12, 54 Stat. 1193, 1197 (adding compensation for examinations); Act of Mar. 24, 1943, ch. 22, § 3, 57 Stat. 43, 44 (adding compensation for vocational rehabilitation); Act of Sept. 2, 1958, Pub.L. No. 85–857, 72 Stat. 1105, 1124 (codifying the law at 38 U.S.C. § 351); Act of Oct. 15, 1962, Pub.L. No. 87–825, § 3, 76 Stat. 948, 950 (providing offset for recovery under Federal Tort Claims Act); Veterans Disability Compensation and Survivor Benefits Act of 1976, Pub.L. No. 94–433, § 404, 90 Stat. 1374, 1379; Veterans' Compensation and Program Improvements Amendments of 1984, Pub.L. No. 98–223, § 213, 98 Stat. 37, 46; Department of Veterans Affairs Codification Act,

■ The legislative history convincingly demonstrates that Congress's paramount concern was to compensate veterans injured by VA medical treatment. The Congressional discussion preceding enactment includes at times the words fault and accident, and at other times speaks of no-fault liability. The resulting statute omits fault and accident from its language. Congress recognized that injuries would likely occur where the treatment was negligent or where an accident occurred during treatment, but there is no indication whatsoever in the legislative history or in the resulting legislative enactment that Congress intended to place on the veteran the complex and difficult burden of proving that negligence or an accident actually occurred during treatment as a condition to compensation. The World War Veterans' Act was remedial legislation and as such should be construed broadly to the benefit of the veteran. *See Tcherepnin v. Knight*, 389 U.S. 332, 336, 88 S.Ct. 548, 553, 19 L.Ed.2d 564 (1967). This is all consistent with Congress's enactment of a statute that plainly requires injury and causation but plainly does not require proof of fault or accident.

The critical inquiry for compensation under 38 U.S.C. § 1151 therefore is, assuming no willful misconduct by the veteran, whether the veteran was injured by the treatment. If he was, then as the statute and legislative history make clear, regardless of VA fault or accident, the veteran is to be compensated because the VA "having undertaken to bestow a benefit, has, in fact, inflicted a loss." Because the legislative history does not reveal a clearly expressed legislative intent to require a veteran in order to receive compensation to show that he suffered an injury as the result of faulty medical treatment or an accident occurring during treatment, the Secretary has not made the " '*extraordinary showing* of ... intentions' " necessary to warrant departure from the plain meaning of the text. *Glaxo Operations*, 894 F.2d at 396 (emphasis in original) (quoting *Garcia v. United States*, 469 U.S. 70, 75, 105 S.Ct. 479, 482, 83 L.Ed.2d 472 (1984)).

Pub.L. No. 102–83, § 5, 105 Stat. 378, 406

### C.

The Secretary argues that this court must defer to the VA's long-standing regulations purporting to interpret the statute as requiring fault or accident. For several reasons we will not defer. As discussed above, Congress has spoken clearly on the issue of fault or accident, and unambiguously has not required it: Congress has not left any gap in the statutory language that might give the Secretary discretion to require fault or accident. Therefore we owe no deference to the VA's interpretation. *Glaxo Operations*, 894 F.2d at 398.

In addition, the VA's interpretation of the statute was not contemporaneous with the statute's enactment. Rather, the VA first absolutely required fault or accident some 10 years after the enactment of the original statutory provision, and 5 months after reenactment of the statute which the VA has always maintained was the same in scope as the original enactment. In such circumstances the force of the regulation is substantially weakened. *See id.* at 398–99.

Finally, we reject the Secretary's urging for deference based on the fact that the regulation or its equivalent is long-standing. *See Horner v. Andrzjewski*, 811 F.2d 571, 574 (Fed.Cir.1987). Although the regulation has existed for nearly 60 years, it was not expressly made judicially reviewable until 1988. In that year, Congress established under Article I of the Constitution the Court of Veterans Appeals to provide for the first time judicial review of decisions of the VA. *See* Veterans' Judicial Review Act, Pub.L. No. 100–687, § 301, 102 Stat. 4105 (1988). Jurisdiction for appeals from the Court of Veterans Appeals lies exclusively in this court. *Id.* Until 1988, as stated by Congress, the VA stood "in 'splendid isolation as the single federal administrative agency whose major functions [we]re explicitly insulated from judicial review.' " H.R.Rep. No. 100–963, 100th Cong., 2d Sess. 10, *reprinted in* 1988 U.S.C.C.A.N. 5782, 5791. Many VA regulations have aged nicely simply because Congress took so long to provide for judicial review. The length of such regulations' unscrutinized and unscrutinizable existence,

(1991).

however, does not in itself form a basis for us to presume they are valid and therefore defer to them. If anything, Congress's lengthy deliberation and carefully crafted scheme for judicial review of VA regulations counsels for vigorous review.

We also reject the Secretary's argument that Congress ratified the fault or accident element in 1934 when it reenacted the 1924 Act. Even if, as the Secretary argues, in this case Congress could be presumed to be aware of the VA's regulatory interpretations of the statute, *see Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran,* 456 U.S. 353, 382 n. 66, 102 S.Ct. 1825, 1841 n. 66, 72 L.Ed.2d 182 (1982), there has been no showing that the VA definitively interpreted the statute as requiring proof of fault or accident prior to the time Congress reenacted the statute. Reenactment occurred on March 28, 1934, while the Administrator's definitive, restrictive stance was taken later in August of that year. Nor does the Congressional discussion preceding reenactment cited by the parties even refer to the VA regulation. As the discussion above indicates, Congress initially enacted a broad statute that would encompass instances of fault and accident leading to injury, but was not limited to them. That the VA deemed fault or accident important at the time of reenactment does not show that Congress intended to so limit the statute. Consequently, "[i]n such circumstances we consider the [1934] reenactment to be without significance." *United States v. Calamaro,* 354 U.S. 351, 359, 77 S.Ct. 1138, 1144, 1 L.Ed.2d 1394 (1957); *see Pierce v. Underwood,* 487 U.S. 552, 566–68, 108 S.Ct. 2541, 2550–51, 101 L.Ed.2d 490 (1988).

█ The VA required Gardner to prove that as the result of his medical treatment he suffered an injury or an aggravation of an injury, *and* either that the particular treatment was performed with negligence or that during the treatment an accident occurred. Congress, however, did not require the veteran to discover and prove precisely what happened during his treatment (*e.g.,* that the VA personnel acted negligently or that a mishap occurred), a time when perhaps the veteran was not even conscious. To impose on the veteran the obligation to prove an element of accident or fault is to curtail drastically the statutory right conferred on him by 38 U.S.C. § 1151. The Secretary tells us not surprisingly that a no-fault scheme is more expensive than a fault-based scheme. That however would be Congress's concern. The VA's desire to pay less compensation than Congress mandated could not authorize the extra-statutory legislation embodied in 38 C.F.R. § 3.358(c)(3). "The only authority conferred, or which could be conferred, by the statute is to make regulations to carry out the purposes of the act—not to amend it." *Miller v. United States,* 294 U.S. 435, 440, 55 S.Ct. 440, 442, 79 L.Ed. 977 (1935). We hold that 38 C.F.R. § 3.358(c)(3) is therefore invalid.

*AFFIRMED.*