# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 98-854

WILLIAM F. COTTLE, APPELLANT,

V.

ANTHONY J. PRINCIPI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued June 8, 2000                                            Decided April 27, 2001  )

*Kenneth M. Carpenter*, of Topeka, Kansas, for the appellant.

*Richard Mayerick*, with whom *Leigh A. Bradley*, General Counsel; *Ron Garvin*, Assistant General Counsel; and *Carolyn F. Washington*, Deputy Assistant General Counsel, were on the brief, all of Washington, D.C., for the appellee.

Before KRAMER, *Chief Judge*, and STEINBERG and GREENE, *Judges*.

GREENE, *Judge*: Veteran William F. Cottle appeals, through counsel, an April 30, 1998, Board of Veterans' Appeals (Board or BVA) decision that determined that his back injury, sustained while he was working as an employee of the Dallas, Texas, Transit System (DTS) and receiving VA rehabilitation employment services, did not occur as the result of "the pursuit of a course of vocational rehabilitation under [c]hapter 31" of title 38, United States Code, and thus concluded that he "lacks basic eligibility for [Department of Veterans Affairs] disability compensation under 38 U.S.C. § 1151 . . . ."  Record (R.) at 5.  The Court has jurisdiction over the case under 38 U.S.C. §§ 7252(a) and 7266(a).  For the following reasons, the Board's decision will be reversed and the matter remanded.

## I. FACTS

Mr. Cottle served in the U.S. Army from July 1973 to February 1976. R. at 10. After service, he was awarded VA service connection for a knee condition. From July 2, 1984, until June 28, 1985, he was enrolled in a VA vocational rehabilitation program established under chapter 31 of title 38, United States Code, and attended "ABC Trade School" (ABC) in Arizona to become an electronics technician. R. at 61. In June 1985, Mr. Cottle apparently received employment assistance from VA, which included job placement assistance and monetary benefits. *See* R. at 67-73. A Vocational Rehabilitation and Counseling Services (VR&C) "REHABILITATION PLAN" indicates that, although the ABC placement office was assisting Mr. Cottle with his job search, including evaluating the "quality of [his] resume" and helping him to "[f]ollow-up on [employment] leads," VA was supervising the entire process. R. at 67 ("contact VR[&C] once a month"). Furthermore, the stated "objective" of the rehabilitation plan was to "[u]se appropriate VA benefits relating to job placement." *Id.* In August 19, 1985, he was hired by the DTS (R. at 69, 310, 314) in the capacity of a "[p]robationary employee." R. at 702. Under its employment services and assistance program, VA, in September 1985, provided Mr. Cottle with the work tools he was required to have in order to maintain employment with DTS. R. at 71-73.

On October 7, 1985, Mr. Cottle injured his back while working at DTS and thereafter received workers' compensation and federal Social Security disability benefits for his back injury. R. at 267-74, 307. In November 1988, he filed an application for VA service connection for his back injury; he asserted that his injury had occurred while he was participating in a VA rehabilitation training program, and thus he was entitled to compensation under 38 U.S.C. § 351 (now § 1151). R. at 144-47, 313-15. In support of his claim, he submitted medical evidence that documented his October 1985 back injury. R. at 314-37. In November 1990, the Phoenix, Arizona, VA regional office (RO) found that although Mr. Cottle was "not considered to be rehabilitated until he is employed and adjusted in employment for 60 days, nevertheless, the veteran was not on vocational rehabilitation training status when he injured his back," and denied the claim. R. at 339-41. Mr. Cottle filed a Notice of Disagreement (NOD), a Statement of the Case (SOC) was issued by the RO, and he appealed to the Board. R. at 350-54, 357. In July 1991, the Board remanded the matter to the RO and directed that the RO obtain Mr. Cottle's chapter 31 rehabilitation and counseling

2

records to determine if he was engaged in a program of vocational rehabilitation services at the time of his injury. R. at 372. The RO obtained the records, reviewed them, and in December 1991 concluded that Mr. Cottle's back injury was not the direct and proximate result of an essential activity or function of his vocational rehabilitation course and denied the claim. R. at 400-03. Mr. Cottle disagreed with this decision and, on appeal to the Board, contended that his injury occurred while still pursuing rehabilitation under the VA rehabilitation program. R. at 416-21. Further, he maintained that because his employment began on August 19, 1985, and his injury occurred on October 7, 1985, he had not achieved rehabilitated status because he was not employed and adjusted in employment for 60 days as provided for under 38 C.F.R. § 21.194 (1984). R. at 418-20. On May 26, 1992, the Board informed Mr. Cottle that a decision on his appeal would be delayed pending the outcome of a government appeal in the case of *Gardner v. Derwinski*, the results of which could affect the outcome of his case. R. at 426; *see Gardner*, 1 Vet.App. 584 (1990), *aff'd sub nom. Gardner v. Brown*, 5 F.3d 1456 (Fed. Cir. 1993), *aff'd*, 513 U.S. 115 (1994).

After a decision was reached in *Gardner, supra*, the Board, in March 1996, again remanded Mr. Cottle's claim to the RO. R. at 667-71. In the remand order, the Board directed the RO (1) to obtain all records relating to Mr. Cottle's participation in the chapter 31 program; (2) to conduct a detailed audit of Mr. Cottle's chapter 31 account in order to determine with certainty what monetary or other benefits Mr. Cottle was receiving under the chapter 31 program; (3) to contact DTS for information concerning Mr. Cottle's employment history and the circumstances relating to his injury; and (4) to ask the VR&C officer to determine if all of Mr. Cottle's pertinent chapter 31 records had been obtained and made a part of the file. *Id*. Among the responses obtained by the RO was an August 1996 VA memorandum, in which the VR&C officer stated that "[o]n March 26, 1986, the Waco, [Texas], VARO placed the veteran's case in rehabilitated status in the [c]hapter 31 case status system" but concluded that "[t]his veteran was still an active participant in the [c]hapter 31 program at the time of his injury on October 7, 1985." R. at 726. That memorandum further noted: "A veteran is a program participant until VR&C determines that the veteran has made a satisfactory adjustment to employment. Since this veteran could not return to work, after his injury on 10/7/85, the declaration of rehabilitation, made on 3/26/86[,] was not valid." *Id*.

3

After complying with the Board's remand instructions, the RO asked the VA regional counsel to provide a legal opinion regarding whether under section 1151 Mr. Cottle was "in pursuit of a course of vocational rehabilitation" at the time that he injured his back. R. at 728-29. The regional counsel referred that question to the VA General Counsel for her legal opinion. R. at 731. On April 7, 1997, the General Counsel issued a General Counsel Precedent Opinion that concluded that "a chapter 31 'vocational rehabilitation program' participant who is *receiving* only a period of employment services while engaged in post-training employment is not *pursuing* 'a course of vocational rehabilitation' within the meaning of section 1151 so as to qualify for disability compensation benefits under that section." VA Gen. Coun. Prec. 14-97 (Apr. 7, 1997) [hereinafter G.C. Prec. 14-97]; R. at 760. Relying upon this opinion, the RO denied Mr. Cottle's claim, and he appealed to the Board. R. at 782. In the decision here on appeal, the Board, bound by the General Counsel's opinion, concluded that, as a matter of law, Mr. Cottle was not eligible for VA section 1151 compensation. R. at 1-6. On appeal there is no dispute as to the facts. The sole question is whether the General Counsel's opinion, upon which the Board relied, is legally correct.

## II. APPLICABLE LAW

Section 351 of title 38, United States Code, under which the appellant filed his claim, was renumbered as 38 U.S.C. § 1151 without any substantive change in August 1991 and then published in the 1992 Code of Federal Regulations. That version of section 1151 applies to the appellant's claim, *see Jones v. West,* 12 Vet.App. 460 (1999), and all references hereinafter to section 1151 are to the 1992 version unless otherwise indicated. Section 1151 provided, in pertinent part:

> Where any veteran shall have suffered an injury . . . as the result of . . . *the pursuit of a course of vocational rehabilitation under chapter 31 of this title* . . . , and such injury or aggravation results in additional disability to . . . such veteran, disability . . . compensation under this chapter . . . shall be awarded in the same manner as if such disability . . . were service-connected.

38 U.S.C. § 1151 (emphasis added). Section 1151 was further amended after the *Gardner* decision, but that amendment applies only to claims filed on or after October 7, 1997. *See* Pub. L. No. 104-204, § 422(b)(1), (c), 110 Stat. 2926-27 (1996) (found at 38 U.S.C. § 1151 note) (subsection (c) nullifying October 1, 1996, effective date set forth in subsection (b)(1)); *see also* 38 U.S.C. § 1151

4

(1998); *Brown v. Gardner*, 513 U.S. 115 (1994); *Boggs v. West*, 11 Vet.App. 334, 343-44 (1998) (noting that revised section 1151 applies only to claims filed on or after October 7, 1997, pursuant to specific provision of statute).

Chapter 31 of title 38, United States Code, provides for the training and rehabilitation of veterans with service-connected disabilities. "The purposes of [chapter 31] are to provide for all services and assistance necessary to enable veterans with service-connected disabilities to achieve maximum independence in daily living and, to the maximum extent feasible, *to become employable and to obtain and maintain suitable employment*." 38 U.S.C. § 3100 (emphasis added). In chapter 31, there is no definition for the section 1151 term "course of vocational rehabilitation." Likewise, there is no definition in section 1151 for that term. However, 38 U.S.C. § 3101 does refer to a VA "vocational rehabilitation program" and defines that rehabilitation program to include:

> (A) the services provided for in [chapter 31] that are needed for the accomplishment of the purposes of this chapter, including . . . educational, vocational, and employment services as are determined by the Secretary to be needed--
>
> . . . .
>
> (ii) in the case of a veteran for whom the achievement of a vocational goal is determined to be reasonably feasible, to enable such veteran to become, to the maximum extent feasible, employable and to obtain and maintain suitable employment . . . .

38 U.S.C. § 3101(9)(A)(ii). Additionally, 38 U.S.C. § 3104 provides in pertinent part: "Services and assistance which the Secretary may provide under this chapter, pursuant to regulations which the Secretary shall prescribe, include . . . [p]lacement services to effect suitable placement in employment, and postplacement services to attempt to insure satisfactory adjustment in employment." 38 U.S.C. § 3104(a)(5).

Under VA regulation, the term rehabilitation program "includes, when appropriate: (1) A vocational rehabilitation program (see paragraph (i) of this section); . . . or (3) A program of employment services for employable veterans who are prior participants in Department of Veterans Affairs or state-federal vocational rehabilitation programs." 38 C.F.R. § 21.35(f) (2000). Further, 38 C.F.R. § 21.35(i) (2000) restates the definition of "vocational rehabilitation program" in the same terms as already defined in 38 U.S.C. § 3101(9)(A)(ii), *supra*.

5

Additionally, 38 C.F.R. § 21.210 provides in pertinent part:

(a) *Purpose of furnishing supplies*. Supplies are furnished to enable a veteran to pursue rehabilitation and achieve the goals of his or her program.

(b) *Definition*. The term supplies includes books, tools, and other supplies and equipment which VA determines are necessary for the veteran's rehabilitation program.

(c) *Periods during which supplies may be furnished*. Supplies may be furnished during:

(1) Extended evaluation;

(2) Rehabilitation to the point of employability;

(3) Employment services;

. . . .

38 C.F.R. § 21.210 (2000). Also, 38 C.F.R. § 21.268 provides in relevant part: "A veteran who completes a period of rehabilitation and reaches the point of employability will be paid an employment adjustment allowance for a period of two months at the full-time subsistence allowance rate for the type of program the veteran was last pursuing." 38 C.F.R. § 21.268(a) (2000). Moreover, 38 C.F.R. § 21.283 provides:

(c) *Rehabilitation to the point of employability has been achieved*. The veteran who has been found rehabilitated to the point of employability shall be declared rehabilitated if he or she:

(1) Is employed in the occupational objective for which a program of services was provided or in a closely related occupation for at least 60 continuous days;

. . . .

(d) *Rehabilitation to the point of employability has not been completed*. A veteran under a rehabilitation plan who obtains employment without being declared rehabilitated to the point of employability as contemplated by the plan, including a veteran in a rehabilitation program consisting solely of employment services, is considered to be rehabilitated if the following conditions exist:

(1) The veteran obtains and retains employment substantially using the services and assistance provided under the plan for rehabilitation.

(2) The employment obtained is consistent with the veteran's abilities, aptitudes and interests.

(3) Maximum services feasible to assist the veteran to retain the employment obtained have been provided.

(4) The veteran has maintained the employment for at least 60 continuous days.

38 C.F.R. § 21.283 (2000).

6

The VA regulations existing at the time that Mr. Cottle filed his claim and at the time of the Board's 1998 decision were identical to the above current VA regulations.

### III. ANALYSIS

Both parties acknowledge that 38 U.S.C. § 1151 provides for compensation to be paid to a veteran who was injured as the result of "the pursuit of a course of vocational rehabilitation." However, the parties are not in agreement as to what is meant by a veteran who is in "the pursuit of a course of vocational rehabilitation." The VA General Counsel [hereinafter General Counsel] has interpreted this phrase to apply only when a veteran is pursuing vocational rehabilitation training, and thus a vocational rehabilitation trainee "who is receiving only a period of employment services while engaged in post-training employment is not pursuing 'a course of vocational rehabilitation' within the meaning of section 1151 so as to qualify for disability compensation benefits under that section." G.C. Prec. 14-97, CONCLUSION. She contends that *receiving* post-training employment services is not *pursuing* a course of vocational rehabilitation. Mr. Cottle argues that G.C. Prec. 14-97 is inconsistent with the statute it purports to interpret. Deciding whether the General Counsel correctly interpreted the meaning of that phrase requires the Court to examine § 1151 as a whole and, if necessary, to determine the reasonableness and validity of VA regulations that implement that statute. *See Gardner, supra*.

The Court interprets a statute de novo. *See Butts v. Brown*, 5 Vet.App. 532, 539 (1993) (en banc). The starting point in interpreting a statute is examining the language and structure of the statute itself, for "if the intent of Congress is clear, that is the end of the matter." *Cacatian v. West*, 12 Vet.App. 373, 376 (1999) (citing *Gardner v. Brown*, 5 F.3d at 1456); *see also Meeks v. West*, 12 Vet.App. 352, 354 (1999) ("Principles of statutory construction require that, where a statute has a plain meaning, a Court shall give effect to that meaning. . . . [E]ach part or section [of a statute] should be construed in connection with every other part or section so as to produce a harmonious whole." (Internal quotations and citations omitted.)). However, if "it is clear that . . . the literal import of the text . . . is inconsistent with the legislative meaning or intent, or such interpretation leads to absurd results," NORMAN J. SINGER, SUTHERLAND ON STATUTORY CONSTRUCTION § 46.07

7

(5th ed. 1992), the Court will not reach that result. *See U.S. v. X-Citement Video, Inc.*, 513 U.S. 64, 70 (1994); *United States v. Brown*, 333 U.S. 18, 25-26 (1948); *Timex V.I., Inc., v. United States*, 157 F.3d 879, 886 (Fed. Cir. 1998); *Brooks v. Donovan*, 699 F.2d 1010, 1011-12 (9th Cir. 1983); *Demko v. University*, 44 Fed. Cl. 83, 87 (1999); *Faust v. West*, 13 Vet.App. 342, 350 (2000); *cf. Davenport v. Brown*, 7 Vet.App. 476, 483-84 (1995) (finding no "absurd result" in interpretation of other chapter 31 provision). Further, in *Chevron v. Natural Resources Defense Council*, 467 U.S. 837 (1984), the Supreme Court provided the following guidance to reviewing courts:

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. . . . [H]owever, . . . if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Id.* at 842-43 (footnotes omitted).

Section 1151 states that a veteran who was injured as the result of "the pursuit of a course of vocational rehabilitation," shall be awarded disability compensation. However, neither section 1151 nor any other section in title 38 provides a meaning for the phrase"the pursuit of a course of vocational rehabilitation." Further, as the General Counsel acknowledged in her opinion, and as both parties agreed at oral argument, Congress has not defined this phrase in the statute and there is no legislative history defining what Congress meant by "the pursuit of a course of vocational rehabilitation." Therefore, the Court must look to the agency's interpretation, if any, of the phrase. *See Chevron, supra.* In this regard, the pertinent regulations prescribed by VA with respect to chapter 31 and section 1151, as quoted above, do not provide a meaning of "the pursuit of a course of vocational rehabilitation." *See* 38 C.F.R. §§ 21.35(f), (i), 21.210, 21.268(a), 21.283. However, the regulation at 38 C.F.R. § 21.35(i) does define a "vocational rehabilitation program" in the same terms as does 38 U.S.C. § 3101(9)(A)(ii).

Turning to the interpretation of section 1151 contained in G.C. Prec. 14-97, the General Counsel conceded that Mr. Cottle "was receiving chapter 31 employment services at the time of his injury and thus was then a participant in a 'vocational rehabilitation program' under that chapter."

8

She then proceeded to determine whether that injury was the result of "the pursuit of a course of vocational rehabilitation" within the meaning of and intent underlying section 1151.

The General Counsel pointed out that the vocational rehabilitation program under chapter 31 was extensively revised in 1980 to expand the specific services provided to include "all services and assistance to enable such veterans 'to achieve maximum independence in daily living and, to the maximum extent feasible, to become employable and to obtain and maintain suitable employment.'" G.C. Prec. 14-97, para. 8 (quoting 38 U.S.C. § 3100). She also noted that Congress did not amend section 1151 to adopt the broader term of "vocational rehabilitation program" as used in the revised chapter 31, but retained the term "course of vocational rehabilitation." G.C. Prec. 14-97, para. 9. Additionally, she acknowledged that "pursuit of a course of vocational rehabilitation" could translate to "following a plan of services under a vocational rehabilitation program," but concluded that the language "pursuit of a course" is more commonly understood as relating to training and that Congress intended to continue the narrower category of relief for injury resulting from vocational rehabilitation training. *Id*. at para. 10. The General Counsel also determined: "No nexus to VA exists when the veteran has been assisted to the point of employability and seeks out and obtains a job with an independent private employer." *Id*. at para. 15. She further stated that 38 C.F.R. § 3.358(c)(5) "requires the finding of proximate cause between the injury and an essential activity or function within the scope of the 'vocational rehabilitation course'." *Id*. at para. 16. Thus, she concluded that "the intent of [the] section 1151 provisions pertinent to this matter is to provide compensation for injuries sustained only as a result of pursuing vocational rehabilitation training to achieve employability, not as a result of engaging in post-training employment." *Id*. at CONCLUSION.

Generally, this Court defers to a regulatory construction of a statute that is adopted by the Secretary if that construction is consistent with the language of the statute and is a reasonable interpretation of the law. However, a VA General Counsel opinion is not a regulation. Although the Board is bound by General Counsel precedent opinions, this Court is not. Indeed, we do not owe any deference to an opinion prepared exclusively for adjudication or litigation of a particular claim, as was done in G.C. Prec. 14-97. *See Sabonis v. Brown*, 6 Vet.App. 426, 429 (1994); *see also Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 212-13 (1998); *Alaniz v. OPM*, 728 F.2d 1460, 1465 (Fed. Cir. 1984).

The Court notes that the Board decision in Mr. Cottle's appeal was delayed pending the results of a government appeal in the *Gardner* case cited above. In that case, the United States Supreme Court affirmed this Court's decision that section 1151 does not impose or authorize the requirement that a claimant for veterans' benefits prove that his disability resulted from fault on the part of VA. *Gardner*, 513 U.S. at 116. Further, the Supreme Court noted that interpretive doubt is to be resolved in the veteran's favor. *Id*., at 118; *see also King v. St. Vincent's Hosp.*, 502 U.S. 215, 220-21, n. 9 (1991). "[A] VA position that adopts a construction less beneficial to a veteran, as well as any VA resolution of statutory or regulatory ambiguity, would have to take into account the impact of *Gardner,* that held that 'interpretive doubt is to be construed in the veteran's favor.'" *Wright v. Gober*, 10 Vet.App. 343, 351 (1997) (citing *Gardner*, 513 U.S. at 117-18); *see also Disabled American Veterans v. Gober*, 234 F.3d 682, 691-92 (Fed. Cir.) ("modifying the traditional *Chevron* analysis is the doctrine governing the interpretation of ambiguities in veterans' benefit statutes--that 'interpretive doubt is to be resolved in the veteran's favor.'" (quoting *Gardner*, 513 U.S. at 118)), *cert. denied sub nom.*, *National Org. of Veterans Advocates v. Principi*, 69 U.S.L.W. 3601 (U.S. Apr. 16, 2000) (No. 00-1364); *Allen v. Brown*, 7 Vet.App. 439, 448-49 (1995) (en banc). This the General Counsel did not do in determining whether Mr. Cottle was "in the pursuit of a course of vocational rehabilitation." Indeed, she failed to discuss or consider *Gardner* at all. She acknowledged that section 1151 could be read broadly to encompass the expanded scope of chapter 31 services and assistance, but instead of resolving any interpretive doubt in favor of the veteran, proceeded to adopt a narrower interpretation in direct contravention of *Gardner, supra*. We conclude that by doing so she also failed to consider the overall structure of the VA statute and the Secretary's implementing regulations.

In context, section 1151 purports to authorize compensation for veterans who are injured, through no willful misconduct of their own, as the result of pursuing a course of vocational rehabilitation under chapter 31. Under chapter 31, VA acts to rehabilitate veterans whose service to our country has resulted in service-connected disability and to enable them to obtain and maintain suitable employment. It is apparent from readings of the statute and the regulations that such a course of VA action embraces a full program of rehabilitation, one that ends when the veteran has been declared rehabilitated. As stated in 38 C.F.R. § 21.283(c)(1), a veteran who is rehabilitated to

the point of employability shall be declared rehabilitated if he or she is "employed in the occupational objective for which a program of services was provided or in a closely related occupation *for at least 60 continuous days*." 38 C.F.R. § 21.283(c)(1) (emphasis added). This criterion was not considered by the General Counsel, nor did she give any weight to the VR&C officer's determination (R. at 726) that because Mr. Cottle was injured within the 60-day period after he was employed in such an occupational objective, he was not rehabilitated and thus was still under the program designed for his rehabilitation. We conclude that G.C. Prec. 14-97 interpreted section 1151 in a manner not in accordance with the law by failing to apply the directive of *Gardner* to resolve any statutory ambiguity in favor of the veteran. If the statutory ambiguity is to be resolved against such a veteran, it is Congress, not VA or this Court, that must do so.

Simply put, as the parties conceded at oral argument, section 1151 is ambiguous as to what constitutes "pursuit of a course of vocational rehabilitation." As noted in the General Counsel's opinion, the word "course" can be read broadly or narrowly and is ambiguous. *See* MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 266 (10th ed. 1999) (defining "course" both as a "progression through a development or period or a series of acts or events" and as "a number of lectures or other matter dealing with a subject; also: . . . a series of such courses constituting a curriculum."). Thus, construing that ambiguity in Mr. Cottle's favor, and considering the entire pro-claimant statutory scheme found in title 38 in the context of the express purpose of chapter 31, we hold that G.C. Prec. 14-97 is not legally correct. *See* 38 U.S.C. § 3100 (general purpose of chapter 31 to provide assistance necessary to enable veterans with service-connected disabilities to become employable and obtain and maintain suitable employment); *see also Gardner*, 513 U.S. at 117-18; *Meeks, supra*.

We reject the Secretary's position that relies upon the General Counsel's opinion and hold that the phrase "in the pursuit of a course of vocational rehabilitation" in the version of section 1151 in effect at the time of Mr. Cottle's injury contextually refers to a vocational rehabilitation program defined in chapter 31 of title 38. A vocational rehabilitation program includes "educational, vocational, and employment services . . . to enable [a] veteran to become, to the maximum extent feasible, employable and to obtain and maintain suitable employment." 38 U.S.C. § 3101(9)(A)(ii). Therefore, if a veteran is injured, not due to his own misconduct, as the result of the pursuit of such a course or program and before he is declared rehabilitated, he has basic eligibility under section

11

1151 to file a claim for VA compensation. We note that the current version of section 1151 provides for the same eligibility. We do not express an opinion as to the merits of Mr. Cottle's claim but determine that he has that basic section 1151 eligibility that the BVA denied him (R. at 5). Thus, the matter will be remanded for adjudication of his section 1151 claim.

## IV. CONCLUSION

On consideration of the foregoing analysis and a review of the record, the Board's April 30, 1998, decision is REVERSED and the matter is REMANDED for further adjudication.