**UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS**

No. 03-0181

KAREN GORDON, APPELLANT,

V.

R. JAMES NICHOLSON,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

BETH GORDON SAMARGIN, INTERVENOR.

On Appeal from the Board of Veterans' Appeals

(Decided   May 31, 2007   )

*Glenn R. Bergmann*, of Berrien Springs, Michigan, for the appellant.

*Tim S. McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Edward V. Cassidy*, *Jr.*, Deputy Assistant General Counsel; and *Christine D. Senseman*, all of Washington, D.C., for the appellee.

Before KASOLD, LANCE, and SCHOELEN, *Judge*s.

SCHOELEN, *Judge*, filed the opinion of the Court.  LANCE, *Judge*, filed a dissenting opinion.

SCHOELEN, *Judge*:   The appellant, Karen Gordon, through counsel, appeals an October 17, 2002, Board of Veterans' Appeals (Board or BVA) decision that denied her claim, on behalf of her two minor children (Kelin A. Gordon and Hunter M. Gordon), for equal shares of the proceeds of the National Service Life Insurance (NSLI) policy of her deceased father, Edward E. Gordon.  Beth G. Samargin, another one of Mr. Gordon's daughters, is an Intervenor in this case. The Board determined that Ms. Samargin's two minor children (Aline E. Wylie and Kristiana L. Wylie) were the only beneficiaries under the policy.  Record (R.) at 1-13.  The appellant and the Secretary filed briefs.  Additionally, Ms. Gordon and the Secretary filed supplemental briefs and a supplemental memorandum of law. Ms. Samargin did not file any briefs in this case.  This appeal

is timely, and the Court has jurisdiction over the case pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). Because VA failed to provide the appellant VCAA notice as to the information and evidence necessary to substantiate her claim, the Court will vacate and remand the Board decision for further proceedings consistent with this opinion.

## I. BACKGROUND

In September 1943, Veteran Edward E. Gordon purchased a $10,000 NSLI policy. R. at 17. In December 1992, a VA regional office (RO) received a properly witnessed "Declaration of Beneficiary" form signed by Mr. Gordon. R. at 47. In that document, two of his granddaughters, Aline E. Wylie and Kristiana L. Wylie, the daughters of Ms. Samargin, were named principal beneficiaries. Each was designated to take half of the proceeds of the policy. *Id.*

The veteran died in August 1995. R. at 64. On September 11, 1995, Ms. Samargin notified the RO of her father's death and filed a claim for the proceeds of his NSLI policy on behalf of her minor children (Aline and Kristiana). R. at 63.

On October 13, 1995, Ms. Gordon filed a claim seeking a portion of the proceeds of Mr. Gordon's NSLI policy on behalf of her two children (Kelin and Hunter). R. at 91-93. In support of her claim, she submitted a copy of a 1994 divorce settlement agreement between Mr. Gordon and Martha Gordon, her mother. Under the terms of the divorce settlement agreement, Mr. Gordon agreed to name each of his four grandchildren as co-beneficiaries of his NSLI policy. R. at 79-82. The pertinent provision of the divorce settlement agreement provided:

> 1. That husband is awarded as his sole and exclusive property the ownership and accumulated cash value of the National Service Life Insurance policy on his life.
> 2. That as long as said policy remains in effect, husband shall name his following grandchildren as equal co-beneficiaries on said policy: Aline, Kristiana, Kelin, and Hunter.

R. at 53.

On October 20, 1995, the RO and insurance center issued an administrative decision that disallowed Ms. Gordon's claim. R. at 95. The RO determined that the proceeds of the NSLI policy were payable to Aline and Kristiana Wylie in accordance with Mr. Gordon's December 1992 beneficiary designation. *Id.* In December 1995, Ms. Gordon appealed the RO decision. R. at 406.

2

In April 1996, the RO issued a Statement of the Case (SOC). R. at 115-20. In August 1997, Ms. Gordon testified at an RO hearing that the veteran stated that he intended to include Kelin and Hunter as co-beneficiaries on the NSLI policy "but did not get around to doing it." R. at 138-39. In her Substantive Appeal, Ms. Gordon asserted that the 1994 divorce decree and her father's verbal promises to her and her two children indicated his intent to make a beneficiary change, but that Mr. Gordon had a history of "not getting around to things . . . in a timely manner" and that he "was very sick [and] possessed little energy." R. at 122.

In December 1997, the RO and insurance center issued a Supplemental SOC (SSOC) indicating that "there was no evidence that the insured either intended and/or took the required action to make a beneficiary change subsequent to the designation of December 15, 1992." R. at 168.

In January 1999, the Board granted Ms. Gordon's claim for equal shares on behalf of her sons. R. at 172-79. The Board found that the divorce settlement agreement was the "last expression" of the appellant's intent and that the filing of the 1994 divorce decree in state court showed evidence of an overt act to make such a change. R. at 179.

Ms. Samargin appealed the January 1999 Board decision to this Court. R. at 180-82. Ms. Gordon was not a party to the appeal before the Court. In February 2000, Ms. Samargin and the Secretary moved the Court for an order remanding this appeal for consideration of *Fagan v. West*, 13 Vet.App. 48 (1999), which was issued subsequent to the January 1999 Board decision. R. at 193-96. In February 2000, the Court granted the joint motion for remand. R. at 192.

In January 2001, the Board issued a decision finding that Ms. Gordon's minor children were not among the beneficiaries of the veteran's NSLI policy. R. at 214-21. The Board, after considering *Fagan*, found that although there was clear and convincing evidence of the veteran's intent to change the beneficiaries of his NSLI policy, he never performed an overt act sufficient to further his intent to change the beneficiaries of the policy. R. at 219-21.

In May 2001, Ms. Gordon, through counsel, appealed that decision to the Court.[1] Ms. Samargin was not a party to the appeal before the Court. In June 2001, the Secretary moved, unopposed, to remand the matter for consideration of the applicability of the Veterans Claims

_____

[1] The appellant's current counsel did not represent the appellant in the 2001 appeal to the Court.

Assistance Act of 2000 (VCAA), Pub. L. No. 106-475, 114 Stat. 2096, in accordance with this Court's decision in *Holliday v. Principi*, 14 Vet.App. 280 (2001). R. at 237-41. In September 2001, the Court granted the Secretary's motion. R. at 236.

On April 26, 2002, the Board notified Ms. Gordon's attorney that she had 90 days from the date of the letter to submit any additional evidence or argument in support of Ms. Gordon's claim. R. at 246-47. There is no indication in the record that Ms. Gordon's attorney responded to this letter. On October 17, 2002, the Board issued the decision now on appeal. R. at 1-12. The Board found that the divorce settlement was clear and convincing evidence of the veteran's intent to change his beneficiary. However, it concluded that there was no evidence that the veteran had performed an overt act reasonably designed to effectuate his intent to change his beneficiaries. R. at 11. The appellant appealed the 2002 Board decision to this Court.

## II. PARTIES' CONTENTIONS

Ms. Gordon raises several arguments before the Court. She asserts as follows: (1) VA failed to fulfill its notice obligations under 38 U.S.C. § 5103(a) (Appellant's Brief (Br. at 8-12)); (2) the Board provided an inadequate statement of reasons or bases for its decision as a result of its failure to discuss whether a VA hearing officer complied with the requirement in 38 C.F.R. § 3.103(c)(2) (2006) to suggest the submission of evidence favorable to a claimant (Appellant's Br. at 13-16); (3) VA failed to consider Ms. Gordon's argument that her father's incapacity rendered him incapable of effectuating the change in beneficiary (Appellant's Br. at 16-17).

The Secretary counters that because an NSLI beneficiary claimant is not a "claimant" within the meaning of 38 U.S.C. §§ 5100 and 5103(a), VA did not have duty to provide Ms. Gordon with any section 5103(a) notice. Appellee's Br. at 11-12. Alternatively, he maintains that the appellant was adequately notified of her rights under the VCAA and any notice error was not prejudicial. *Id*. at 13-19. Finally, the Secretary submits that there is a plausible basis for the Board's finding that the veteran did not make an overt act in furtherance of his intent to change the beneficiaries of his NSLI policy. *Id*. at 20-23.

## III. ANALYSIS
### A. NSLI Beneficiary Claims

The NSLI is a benefit program found in part II (pertaining to "GENERAL BENEFITS"), chapter 19 of title 38 of the U.S. Code. An NSLI policy is a contract between a veteran and the U.S. Government. *See* 38 U.S.C. § 1917. *See White v. United States,* 270 U.S. 175 (1926); *Wolfe v. Gober,* 11 Vet.App. 1, 2 (1997). Under section 1917, the insured veteran has the right to change the beneficiary of an NSLI policy at any time, with or without the knowledge or consent of any present or prior beneficiaries. See 38 U.S.C. § 1917(a); 38 C.F.R. § 8.19 (2006); *see also Wissner v. Wissner,* 338 U.S. 655, 658 (1950); *Young v. Derwinski,* 2 Vet.App. 59 (1992). VA will not recognize a beneficiary change unless there is evidence of an insured's intent to make a change in the designated beneficiary and an affirmative act to effectuate that intent. In *Fagan v. West*, 13 Vet.App. 48 (1999), the Court set forth the test to determine whether an NSLI- insured veteran had effected a beneficiary change:

> First, a person seeking to show that the NSLI insured veteran had effected a beneficiary change [hereinafter "the claimant"] may prevail by proving that the insured veteran complied with the regulations in filing a valid change of beneficiary with VA. Second, if this cannot be shown, then, in order to prevail, the claimant must prove by clear and convincing evidence that the insured veteran intended that the claimant should be the beneficiary and also prove that the insured veteran took an overt action reasonably designed to effectuate that intent. Third, if the insured veteran's intent cannot be proven by clear and convincing evidence, then the claimant must prove the insured veteran's intent by a preponderance of the evidence and must also prove that the insured veteran did everything reasonably necessary, or at least everything he or she subjectively and reasonably believed was necessary, to effectuate his intention. . . . [D]uring this process, the claimant always has the burden of proof.

13 Vet.App. at 57 (citations omitted). Further, the Court held that, "[b]ecause this issue of overt action will generally have to be decided by examining the totality of the circumstances, it is important for the claimant to submit and the fact finder to weigh all available evidence on such factors as whether . . . the insured veteran had the opportunity to take further action." *Id.* (citing *Cirscuolo v. United States*, 239 F.2d 280, 282 (7th Cir. 1956) (recognizing a change in beneficiary, in part, based upon a veteran's inability to complete the beneficiary form because of physical incapacity)).

When questions arise regarding the "denial of applications for insurance" or "disallowance of claims for insurance benefits," the claimant has a right to appeal that decision to the Board by initiating a Notice of Disagreement. *See* 38 C.F.R. § 8.30 (2006) ("[t]he provisions of Part 19 of this

5

chapter will be followed in connection with appeals to the Board of Veterans['] Appeals involving questions pertaining to the denial of applications for insurance, total disability income provision, or reinstatement; disallowance of claims for insurance benefits . . . .").

B. Applicability of the VCAA Notice Provisions to Claims for NSLI Benefits

The VCAA was enacted "to reaffirm and clarify the duty of the Secretary of Veterans Affairs to assist claimants for benefits under laws administered by the Secretary." 146 CONG. REC. H9,912 (daily ed. Oct. 17, 2000) (statement of Rep. Stump); *see* 146 CONG. REC. S9,205 (daily ed. Sept. 25, 2000) (statement of Sen. Brownback for Sen. Specter). The VCAA made a series of amendments to chapter 51 ("CLAIMS, EFFECTIVE DATES, AND PAYMENTS") of title 38, U.S. Code, which, included adding 38 U.S.C. § 5100 to define the term "claimant"; amending 38 U.S.C. § 5102(b) to require that the Secretary inform "claimants" who submit incomplete applications of the information necessary to complete the application; amending 38 U.S.C. § 5103(a) to address the Secretary's duty to notify claimants of required information and evidence necessary to substantiate their claims; adding 38 U.S.C. § 5103A to address the Secretary's duty to assist claimants in developing evidence pertinent to their claims.

Section 38 U.S.C. § 5100 defines a "claimant" as "any individual applying for, or submitting a claim for, any benefit under the laws administered by the Secretary." The Secretary's duties under the VCAA essentially fall into two categories: Collecting evidence that could result in a successful claim, *see* 38 U.S.C. § 5103A, and giving notice to a claimant. Pursuant to 38 U.S.C. § 5102(b), if the Secretary receives an incomplete "application for a benefit under the laws administered by the Secretary," he is charged with the duty of notifying "the claimant . . . of the information necessary to complete the application." Pursuant to section 5103(a), "[u]pon receipt of a complete or substantially complete application" the Secretary is obligated to notify the claimant of any information . . . not previously provided to the Secretary that is necessary to substantiate the claim" and who is responsible for providing such information or evidence.

The Secretary argues that the notice provisions of 38 U.S.C. § 5103(a) do not apply to individuals seeking the proceeds of an NSLI policy because such individuals are not "claimants" within the meaning of 38 U.S.C. § 5100. Secretary's Br. at 11. The Court interprets a statute de novo. *See Butts v. Brown,* 5 Vet.App. 532, 539 (1993) (en banc). A fundamental principal of statutory construction is that "[t]he starting point in interpreting a statute is its language." *Good*

*Samaritan Hosp. v. Shalala*, 508 U.S. 402, 409 (1993); *Lee (Raymond) v. West,* 13 Vet.App. 388, 394 (2000). Furthermore, "'each part or section [of a statute] should be construed in connection with every other part or section so as to produce a harmonious whole.'" *Meeks v. West,* 12 Vet.App. 352, 354 (1999) (quoting 2A N. SINGER SUTHERLAND ON STATUTORY CONSTRUCTION § 46.01 (5th ed.1992)), *aff'd,* 216 F.3d 1363 (Fed. Cir. 2000); *see Cottle v. Principi,* 14 Vet.App. 329, 334 (2001); *Talley v. Derwinski,* 2 Vet.App. 282, 286 (1992). In this regard, one section of a statute should not be read in isolation from the context of the whole act. The Court does not look to a single sentence or part of a sentence, but looks to the provisions of the "'whole law, and to its object and policy.'" *Moreau v. Brown,* 9 Vet.App. 389, 396 (1996) (quoting *Richards v. United States,* 369 U.S. 1, 11 (1962)).

The "plain meaning [of a statute] must be given effect unless a 'literal application of [the] statute [or regulation] will produce a result demonstrably at odds with the intention of its drafters.'" *Gardner v. Derwinski*, 1 Vet. App. 584, 586-87 (1991), *aff'd sub nom*. *Gardner v. Brown,* 5 F.3d 1456 (Fed. Cir. 1993), *aff'd*, 513 U.S. 115 (1994); *Lee,* 13 Vet.App. at 394. Therefore, "[i]f the intent of Congress is clear, that is the end of the matter." *Skinner v. Brown*, 27 F.3d 1571, 1572 (Fed. Cir. 1994) (quoting *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984)).

The Secretary contends that a person claiming to be a beneficiary under an NSLI policy is not a "claimant", within the meaning of section 5100, because the proceeds of the NSLI policy are not "benefits" within the meaning of the statute and instead are merely proceeds, resulting from a contract between the veteran and VA. Secretary's Br. at 11-12. He attempts to make a distinction between veterans who apply for NSLI policies and beneficiaries who seek proceeds under the policies. *Id*. He argues that veterans are claimants but beneficiaries are not. *Id*.

The Court is not persuaded by this argument. Section 5100 governs the definition of "claimant" for the purposes of chapter 51. It provides that the term "'claimant' means any individual applying for, or submitting a claim for, any benefit under the laws administered by the Secretary." 38 U.S.C. § 5100. VA regulations define a "claim" as a written request for "determination of entitlement . . . to a benefit." 38 C.F.R. § 3.1(p) (2005); *see also* 38 C.F.R. § 20.3(f) (2006) (defining "claim" as, inter alia, an "application made under title 38, United States Code, and implementing directives for entitlement to [VA] benefits.").

The statute does not define the term "benefit." However, a fundamental canon of statutory construction is that when interpreting a statute, the words of a statute are given "their ordinary, contemporary, common meaning, absent an indication Congress intended them to bear some different import." *Williams v. Taylor,* 529 U.S. 420, 431 (2000); *Smith (John Anus) v. United States,* 508 U.S. 223 (1993) (citing *Perrin v. United States,* 444 U.S. 37, (1979) (stating that "words [in a statute], unless otherwise defined, will be interpreted as taking their ordinary, contemporary, common meaning."). The term "benefit" is defined in its common, ordinary usage to mean a "payment made by an insurance company, public agency, welfare society, etc., as during sickness, retirement, unemployment, etc. or for death." WEBSTER'S NEW WORLD DICTIONARY OF AMERICAN ENGLISH 129 (3d. College Edition 1988). The Court also notes that VA regulations define the term "benefits" to mean "any payment, service, commodity, function, or status, entitlement to which is determined by the laws administered by the Department of Veterans Affairs pertaining to veterans and survivors." 20 C.F.R. § 20.3(e).

The only limiting criteria imposed by the plain language of section 5100 is that the "claimant" must be seeking a "benefit under the laws administered by the Secretary." There is no question that the NSLI program was created by congressional statute and that the Secretary is charged with the authority to administer the program under the standards created by Congress. Indeed, as the Secretary recognizes in his brief, NSLI policies "'are governed by federal statutes and regulation[s] [in] determining who is to share in the benefits arising from such policies.'" Secretary's Br. at 11 (quoting *Smith (James E.) v. United States*, 226 F. Supp. 656, 658 (W.D. 1964)); *see also Curtis v. West*, 11 Vet.App. 129, 132 (1998) ("[T]he construction of a life insurance policy issued by the United States is governed by federal law."). The fact that Congress chose to have the proceeds of the NSLI policies flow to beneficiaries through the mechanism of a statutorily created contract does not change the character of the proceeds. They are "benefits under the laws administered by the Secretary."

The Secretary is correct that the veteran's "benefit" under the NSLI program is different from the NSLI beneficiary's "benefit." On the one hand, the "benefit" to the veteran is the ability to purchase life insurance at a relatively low cost, to provide for his family after his death. On the other hand, the "benefit" to the beneficiary is the monetary proceeds under the policy. The Court rejects the Secretary's argument that the term "benefit" as used by the statute requires VCAA notification

8

for veterans' claims under the NSLI program but not for NSLI beneficiary claims. The language in section 5100 broadly defines "claimant" as an "individual applying for, or submitting a claim for, *any* benefit under the laws administered by the Secretary." (Emphasis added). The statute clearly applies to any benefit that a claimant seeks and makes no distinction that would exclude certain types of "benefits." The Court similarly refuses to draw the distinction urged by the Secretary that has no basis in the statutory language itself. *See Jones v. Brown*, 41 F.3d 634, 640 (Fed. Cir. 1994) (holding that because the statutory phrase "case pending" in section 506 of the Federal Court's Administration Act of 1992 made no distinction between the fee application stage of a case and consideration of the case on the merits, the court would likewise make no distinction). Thus, while there is a difference in the nature of the "benefits" flowing to the veteran and his beneficiary, each "benefit" is governed by the terms and conditions set forth in the Federal laws enacted by Congress and "administered by the Secretary." As such, both veteran and beneficiary are "claimants" seeking "benefits" within the meaning of section 5100.

In *Livesay v. Principi*, 15 Vet.App. 165, 179 (2001) (en banc), this Court recognized that a "claimant" within the meaning of section 5100 includes a "person applying for or seeking benefits under part II ["GENERAL BENEFITS] or III ["READJUSTED AND RELATED BENEFITS"] of title 38." In *Livesay*, the Court determined that the VCAA did not apply to claims for revisions of decisions based on clear and unmistakable error [CUE] because a CUE litigant is not pursuing a claim for benefits under parts II or III of chapter 38, but rather is collaterally attacking a final decision pursuant to parts IV ("GENERAL ADMINISTRATIVE PROVISIONS"), or V ("BOARD, ADMINISTRATIONS, AND SERVICES") of title 38. *See also Sims v. Nicholson*, 19 Vet.App. 453, 456 (2006) (holding VCAA notice not applicable to applications for restoration of competency; applicant is not seeking benefits under chapter 51 of title 38, but, rather, is seeking a decision regarding how his benefits will be distributed under chapter 55 ("Minors, Incompetents, and other Wards")); *Lueras v.Principi,* 18 Vet.App. 435, 439 (2004) (holding VCAA does not apply to claims for waiver of overpayment of pension benefits under chapter 53 because an applicant for waiver of overpayment is not seeking benefits under chapter 51; rather the applicant is requesting a waiver of recovery of indebtedness). As discussed earlier, the NSLI benefit program is located within part II ("GENERAL BENEFITS") of title 38. Thus, when viewed within the context of title 38, NSLI-beneficiary claimants are "claimants" within the meaning of section 5100.

9

The Secretary's argument also ignores the plain language of section 5103(a).  That section provides:

§ 5103. Notice to claimants of required information and evidence

(a) Required information and evidence. Upon receipt of a complete or substantially complete application, the Secretary shall notify the claimant and the claimant's representative, if any, of any information, and any medical or lay evidence, not previously provided to the Secretary that is necessary to substantiate the claim. As part of that notice, the Secretary shall indicate which portion of that information and evidence, if any, is to be provided by the claimant and which portion, if any, the Secretary, in accordance with section 5103A of this title and any other applicable provisions of law, will attempt to obtain on behalf of the claimant.

(b) Time limitation.

(1) In the case of information or evidence that the claimant is notified under subsection (a) is to be provided by the claimant, such information or evidence must be received by the Secretary within one year from the date such notice is sent.
(2) This subsection shall not apply to any application or claim for Government life insurance benefits.
(3) Nothing in paragraph (1) shall be construed to prohibit the Secretary from making a decision on a claim before the expiration of the period referred to in that subsection.

In summary, subsection (a) sets forth the Secretary's notice obligations.  Subsection (b)(1) sets forth a one-year limit, which begins to run after subsection 5103(a) notice has been provided, to submit the information or evidence specified in 5103(a).  Section 5103(b)(3) authorizes the Secretary to make a decision on a claim prior to the expiration of the one-year period for submitting the information or evidence identified under subsection (a).  Subsection (b)(2) expressly provides that the time limitation in subsection (b) does not apply "to any application or claim for Government life insurance benefits."  A plain reading of the statute indicates that section 5103(a) notice is to be provided to all claimants for VA benefits.  Unlike other "claimants," an individual who files an "application or claim for Government life insurance benefits" is not limited to one year to submit the information or evidence that the Secretary notified the claimant that he may provide to

10

substantiate the claim.[2]

If the Secretary were correct that section 5103(a) notice did not apply to NSLI beneficiary claims, there would be no need for the section 5103(b)(2) exception. This Court has recognized the canon of statutory construction that "legislation must be construed in light of the venerable rule that "'where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" *Dippel v. West*, 12 Vet. App. 466, 474 (1999) (quoting *Gardner*, 513 U.S. at 120 (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983))); *see also Lee (Raymond)*, 13 Vet. App. at 396. Clearly, if Congress had intended that the Secretary's section 5103(a) notice obligations did not apply to NSLI beneficiary claimants, Congress, we believe, would have made its intention clear in the statute and used language to that effect. After examining the plain meaning of sections 5100 and 5103, it is clear that Congress intended that a "claimant" for VCAA purposes includes an individual seeking the proceeds of a deceased veteran's NSLI policy.

Our dissenting colleague raises numerous concerns with this determination; however, these concerns are either unfounded or matters of policy to be addressed not in a court of law, but rather by the executive or legislative branches. *See Republican Party of Minn. v. White*, 536 U.S. 765, 798 (2002). For example, concern that the VCAA should not be made applicable to adversarial proceedings where the Secretary is a stakeholder is a policy matter. Significantly, however, the statutes and regulations governing the VA contemplate adversarial proceedings on claims, *see* 38 U.S.C. § 7105A (simultaneously contested claims); 38 C.F.R. §§ 19.100-102, 20.500-504, 20.713, 20.1408 (2006), and there is no indication in these provisions that competing claimants are not entitled to VCAA notice. Indeed, it is well settled that surviving spouses seeking benefits are entitled to VCAA notice, *see Sachs v. Principi*, 14 Vet.App. 298 (2001); *see also Valiao v. Principi*, 17 Vet.App. 229 (2003), even though there may be competing claims for benefits where "the validity and legal effects of marriage (ceremonial or otherwise), divorce, ostensible marriage, void marriage

---

[2] The Court also notes that 38 U.S.C. § 5102 mirrors section 5103. Section 5102(b)(2) requires the Secretary to notify a claimant who submits an incomplete application for VA benefits as to what is needed to complete the application. Section 5102(c)(1) provides that following notification from VA of the information needed to complete an incomplete application, the statute provides a one-year limit within which the claimant may submit the information. Like section 5103(b)(2), section 5102(c)(2) states that the one-year limit does not apply to "any application or claim for Government life insurance benefits." In 2003, Congress amended section 5102 and added the language in subsection (c) to mirror section 5103(b)(2). *See* Pub. L. No. 108-183, Title VII, § 701(a), 117 Stat. 2670 (Dec. 16, 2003).

and adoption or legitimacy of children" are at issue, VA ADJUDICATION PROCEDURE MANUAL M21, part IV, ch. 5, § 5.05; *see also id.* at § 5.03 (requiring VA to "[s]imultaneously develop contested claims, giving all interested parties every opportunity to submit all available evidence").

Further, the concern that VCAA notice might now be required for claims filed in Federal district court is unfounded. Such notice is required when a claim is filed with the Secretary. *See* 38 U.S.C. § 5103(a). Under the statutory scheme, a suit may not be commenced in a Federal district court until after the Secretary makes a initial decision on a beneficiary claim. *See* 38 U.S.C. §1984(a) and (h). Because VCAA notice is required to be provided to a claimant prior to VA's initial decision on such a claim, whether litigation ensues in Federal district court is irrelevant. Finally, the concern that multiple VCAA notices will now be required, creating "continuous mini-adjudications" also is unfounded. All that is required is that each claimant for benefits be provided the notice required by section 5103(a).

## C. VCAA Notice

Section 5103(a) of title 38, U.S. Code, requires the Secretary to inform a claimant of any information and evidence not of record (1) that is necessary to substantiate the claim, (2) that the Secretary will seek to obtain, if any, and (3) that the claimant is expected to provide, if any. *See Quartuccio v. Principi*, 16 Vet.App. 183, 187 (2002). Further, VA will "request that the claimant provide any evidence in the claimant's possession that pertains to the claim." 38 C.F.R. § 3.159(b)(1) (2006); *see Pelegrini v. Principi*, 18 Vet.App. 112, 121 (2004). The Court refers to these notice requirements as notice elements. Section 5103(a) was enacted to ensure that VA advise claimants, early in the claims process, of what information is necessary to substantiate their claims and who would be responsible for obtaining that information. *Pelegrini*, 18 Vet.App. at 120-22; *see also Mayfield v. Nicholson,* 444 F.3d 1328, 1333 (Fed. Cir. 2006). Thus, the notice required under statutory section 5103(a) and regulatory § 3.159(b) must be provided upon receipt of a complete or substantially complete application for benefits and before an initial unfavorable decision on a claim by an agency of original jurisdiction. *Id.*; *see Pelegrini*, 18 Vet.App. at 120. As the Federal Circuit recognized in *Mayfield*, Congress envisioned a deliberate act of notification directed to meeting the requirements of section 5103. *Mayfield*, 444 F.3d at 1333. A timing error may be cured, however, by a Board remand to the RO for a new VCAA notification followed by a readjudication of the

claim. *Mayfield, supra.* Failure to comply with any of these requirements may constitute remandable error. *Quartuccio*, 16 Vet.App. at 187.

A Board determination of whether section 5103(a) statutory and regulatory notice requirements have been complied with is "a substantially factual determination." *Mayfield,* 444 F.3d at 1335. The Board's findings of fact are reviewed under the "clearly erroneous" standard of review in 38 U.S.C. § 7261(a)(4). *Gilbert v. Derwinski*, 1 Vet.App. 49, 52 (1990). In determining whether a finding is clearly erroneous, the Court is not permitted to substitute its own judgment for that of the Board on issues of material fact. *Id*. at 53. Under this standard of review, the Court must set aside a finding of material fact when, after reviewing the record as a whole, it is "'left with the definite and firm conviction that a mistake has been committed.'" *Id.* at 52 (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

Board error is assessed under the rule of prejudicial error. 38 U.S.C. § 7261(b)(2). If a notice error has been committed, we must "take due account of the rule of prejudicial error." *Id*.; *see Conway v. Principi*, 353 F.3d 1369, 1374-75 (Fed. Cir. 2004); *Overton v. Nicholson*, 20 Vet.App. 427, 433 (2006). Because VCAA notice error is inherently prejudicial, the burden shifts to the Secretary to demonstrate that there was no error or that the appellant was not prejudiced by any failure to give notice. *Sanders v. Nicholson,* __ F3d. __, No. 06-7001 (May 16, 2007).

Here, the appellant asserts that VA failed to satisfy its duty to provide VCAA-compliant notice as to all four VCAA notice elements. Appellant's Br. at 8-12. Because Ms. Gordon's claim was on appeal before VA in November 2000, and thus was pending at VA at the time of the VCAA's enactment, the VCAA applied to her claim. *See Pelegrini, supra.*

In its 2002 decision, the Board stated:

> [T]he Board finds that the RO & IC [Insurance Center] notified both parties of the reason for its decision, as well as the laws and regulations applicable to his claim. This information was provided in the April 1996 Statement of the Case, and in the November 1997 Supplemental Statement of the Case.
>
> Numerous letters have been sent to both parties. In October and November 1995, the RO& IC sent letters to both parties telling them that the appellant's claim had been denied. The appellant was afforded a hearing in August 1997, and the appellee was provided

13

> information about the hearing. Letters were written to the appellant and the appellee in October 1997 asking them to provide more information about their parents' settlement agreement. A letter was also sent to the attorney who prepared the agreement, asking him for information about the agreement. The claims folder is replete with letters and reports of contact between VA and the interested parties. In short, the RO & IC ha[ve] informed the appellant and appellee which information and evidence that the appellant was to provide to VA and which information and evidence that the VA would attempt to obtain on behalf of the appellant.

R. at 6.

We hold that the Board erroneously relied on postdecisional documents in the record, which were unrelated to section 5103(a) notice, to conclude that Ms. Gordon had been provided adequate section 5103(a) and § 3.159(b) notice. *Mayfield*, 444 F.3d at 1335. The timing error in this case was not cured by VCAA notification followed by a readjudication of the claim. *Mayfield, supra.* In this case, Ms. Gordon never received any notice that was directed to satisfying the requirements of section 5103(a). Additionally, nothing in the record relied upon by the Board indicates that Ms. Gordon was ever adequately informed of what evidence was necessary to substantiate her NSLI beneficiary claim. The Secretary's failure to satisfy the first VCAA requirement necessarily subsumes a conclusion that he also failed to satisfy the second and third VCAA elements.

Therefore, having established first-element VCAA notice error, the burden shifts to the Secretary to demonstrate a lack of prejudice in terms of the fairness of the adjudication and opportunity for Ms. Gordon's meaningful participation in the processing of her claim. The Secretary has failed to meet his burden in this case to show that the error was not prejudicial. The Secretary argues that any first-element VCAA notice error was nonprejudicial because the appellant "had actual knowledge of the evidence required to substantiate her claim and that a reasonable person could be expected to understand from the notice provided by VA what was needed to substantiate her claim." Secretary's Supplemental Br. at 5.

The only documents relied upon by the Secretary to demonstrate a lack of prejudice are all postdecisional documents that could not have assisted Ms. Gordon in participating in the initial adjudication of her claim, particularly where there was no VCAA notification followed by a readjudication of the claim. *See Overton*, 20 Vet.App. at 443 (holding that VA could not rely on a June 2002 SSOC, which was a postdecisional document to satisfy its burden to demonstrate that a

14

first-element VCAA error was nonprejudicial); *cf. Medrano v. Nicholson*, __ Vet.App.__, No. 04-1009 (Apr. 23, 2007) (holding that VCAA timing-notice error was nonprejudical where following postadjudicatory, content-complaint VCAA notice, the veteran affirmatively indicated, through counsel, that he had no further evidence to submit; returning the claim to the RO would have resulted in a readjudication of the matter on exactly the same evidence and law previously considered by RO).[3] Moreover, despite the Secretary's argument to the contrary, the record does not demonstrate that Ms. Gordon had knowledge of the evidence and information needed to substantiate her claim, particularly with regard to the evidence needed to support her assertion that her father was unable to effectuate his intent because of incapacity. *See Fagan, supra*.

The Court also notes that it appears that Ms. Gordon was represented by her former counsel from May 2001 until October 17, 2002, the date of the Board decision on appeal. However, there is nothing in Ms. Gordon's former counsel's actions and communications to VA that demonstrate that the appellant had a meaningful opportunity to participate effectively in the processing her claim. *See* R. at 243-44. Therefore, we conclude that the Secretary has not met his burden of demonstrating a lack of prejudice. Because we are not convinced that Ms. Gordon was able to meaningfully participate in the adjudication of this claim, we cannot conclude that the presumed notice error was nonprejudicial. Accordingly, a remand is required to correct that error and to provide VCAA-compliant notice.

The Court does not need to address the other issues that Ms. Gordon has raised on appeal at this time.[4] On remand, Ms. Gordon is free to submit additional evidence and raise these arguments to VA, and VA must address any such evidence and arguments. *See Best v. Principi*, 15 Vet.App. 18, 20 (2001) (per curiam order); *Kutscherousky v. West,* 12 Vet.App. 369, 372 (1999) (per curiam order).

---

[3] Our dissenting colleague would find that Ms. Gordon waived her right to proper notice because she did not submit additional evidence after being afforded the opportunity to do so. Although there is no doubt that Ms. Gordon may waive her right to have proper notice provided to her, such a waiver must be informed and voluntary to be effective. *See Janssen v. Principi*, 15 Vet.App. 370, 374 (2001) (citing *United States v. Olano*, 507 U.S. 725, 732-33 (1993)). In the absence of content-compliant VCAA notice or actual knowledge as to the information necessary to substantiate her claim, the appellant's failure to submit additional evidence cannot constitute a waiver of the right to notice of the information necessary to substantiate a claim.

[4] We need not address the notice provided to the intervenor, Ms. Samargin, because that issue is simply not before us.

## IV.  CONCLUSION

Upon consideration of the foregoing, the October 17, 2002, Board decision is VACATED and that matter is REMANDED to the Board for further adjudication consistent with this opinion.

LANCE: *Judge*, dissenting:  I believe that the appellant had a meaningful opportunity to participate in the Board decision on appeal and that the Court need go no further than such a conclusion to resolve this appeal.  I also have grave doubts about the conclusion that the notice requirements of the VCAA apply to adversarial proceedings where the Secretary's role is that of a neutral stakeholder.  It does not seem to me that the language of the statute or the intent of Congress to facilitate the generally nonadversarial claim process can be applied to require the Secretary to give notice to two competing groups as to how to defeat each other's assertions of entitlement to a sum of money that can only be awarded to one or the other.  The majority's failure to recognize that Congress drafted the VCAA to facilitate *nonadversarial* claims and its failure to describe with any specificity what must be included to provide valid notice to parties seeking to disprove each other's positions leaves the Secretary in the awkward position of having not provided valid notice without sufficient guidance as to how to provide valid notice while remaining a neutral stakeholder.  Leaving the Secretary in this position is both unfair and unnecessary.

## I. MS. GORDON'S PARTICIPATION IN THE DECISION ON APPEAL

For the last seven years, the only substantive issue in this case has been whether the veteran performed an overt act sufficient to effectuate his intent to change the beneficiaries of his NSLI policy. R. at 192-96. Even though Ms. Gordon was not a party to the February 2000 Court proceeding where this issue became the focus of the dispute, she was a party to the January 2001 Board decision that there was no sufficient overt act. R. at 219-21. In May 2001 Ms. Gordon appealed the 2001 Board decision to this Court *through counsel* and obtained a remand. R. at 236. Counsel continued to represent her on readjudication at the Board. R. at 244. Prior to the decision on appeal, the Board sent counsel a letter explicitly giving counsel 90 days to submit additional argument and evidence. R. at 246.

To me, this clearly provided Ms. Gordon the opportunity to meaningfully participate in her claim. The sole substantive dispute during the entire time Ms. Gordon was represented by counsel before VA was whether she had proven the veteran took an overt act sufficient to effectuate the intent he expressed in the divorce agreement. Even assuming–as the majority did in *Overton v. Nicholson*, 20 Vet.App. 427 (2006)–that attorneys do not know how to prove a claim unless the record demonstrates otherwise, it is difficult to see how the majority finds attorney lack of knowledge in this case. As stated above, during the entire period that counsel represented Ms. Gordon before the Secretary there has only been one substantive issue in dispute. Such would be obvious to any attorney who reviewed the Court's February 2000 remand or the Board's January 2001 decision. Moreover, unlike a claim for benefits based upon medical disability, this fact in dispute does not require any expert evidence nor does it raise any potentially complicated issues of causation. The only way to conclude that Ms. Gordon's attorney did not know what evidence she needed to submit is to presume that the attorney did not even take the minimal step of reviewing the basic history of this case; and that presumption, I believe, is unfair to counsel and her reputation. For the reasons stated in my dissent in *Overton*, I believe the majority's presumption of attorney error or oversight makes even less sense when applied to the facts of this case. 20 Vet.App. at 444-46 (Lance, J., dissenting in part).

Moreover, I do not agree with the majority's conclusion that failing to submit evidence in response to the Board's explicit letter inviting further evidence and argument is proof that Ms. Gordon did not have a meaningful opportunity to participate in the adjudication of her claim. As

the Court noted recently in *Prickett v. Nicholson*, 20 Vet.App. 370, 377 n.2 (2006), the failure of an informed party to submit evidence may be regarded as a waiver of the right to submit additional evidence. Given the explicit letter from the Board to counsel providing the opportunity to submit evidence prior to the Board's decision, I would construe the lack of a response as a waiver rather than evidence that counsel does not know how to prove an overt act by the veteran. Accordingly, I do not believe that it is necessary to decide anything more than whether the appellant was able to meaningfully participate in the proceedings below.

## II. THE APPLICABILITY OF VCAA NOTICE

For the reasons stated above, I would not reach the question of whether VCAA notice applies to disputes between potential beneficiaries of an NSLI policy. I believe that this question is much more difficult than the majority acknowledges. Although the majority opinion correctly states that the statutory question must be resolved by looking at the "'"whole law, and to its object and policy,"'" *ante* at 7 (quoting *Moreau v. Brown,* 9 Vet.App. 389, 396 (1996) (quoting *Richards v. United States,* 369 U.S. 1, 11 (1962))), the analysis is actually narrowly drafted so as to read 38 U.S.C. § 5103(a) in isolation from the whole of title 38 and the intent and policy behind the VCAA.

### A. The Purpose of the VCAA

Congress passed the VCAA because it believed *Morton v. West*, 12 Vet.App. 477 (1999), "constructed a significant barrier to veterans who need assistance in obtaining information and evidence in order to receive benefits from the VA." 146 CONG. REC. H9913 (Oct. 17, 2000) (statement of Mr. Stump). In *Morton*, the Court interpreted the version of 38 U.S.C. § 5107 then in effect as prohibiting the Secretary from providing most forms of assistance to benefits claimants who had not submitted "well grounded" claims. 12 Vet.App. at 480-85. The legislative history of the VCAA is replete with statements citing *Morton* as the basis for enacting the VCAA. Overall, the sentiment motivating the VCAA was captured by Senator Rockefeller when he indicated that the VCAA was necessary because "[t]he system to provide benefits to veterans was never intended to be adversarial." 146 CONG. REC. S9212 (Sept. 25, 2000).

This purpose was recognized by U.S. Court of Appeals for the Federal Circuit (Federal Circuit) in *Paralyzed Veterans of America v. Secretary of Veterans Affairs*, 345 F.3d 1334, 1346 (Fed. Cir. 2003) when it invalidated part of the Secretary's implementation of 38 U.S.C. § 5013 by concluding that the challenged "regulation is particularly prejudicial to claimants during the

non-adversarial stages of disputes over benefits, when claimants rely on the strongly and uniquely pro-claimant character of the veterans' benefits system and pursue their statutory entitlements without the assistance of legal counsel." (internal quotation omitted).

Despite the intended focus of the VCAA, the majority applies the notice provisions of that statute to a proceeding that is inherently adversarial. In a dispute over NSLI proceeds, the Secretary acts as a stakeholder for money that cannot be awarded to all competing parties such as in an action in interpleader. *See* FED. R. CIV. P. 22 (authorizing interpleader of parties); 67 (allowing a holder of disputed funds to deposit those funds with the court). In fact, the notes accompanying Rule 22 of the Federal Rules of Civil Procedure state that when Rule 22 was originally adopted in 1937, the advisory committee intended it to apply to "actions upon veterans' contracts of insurance with the United States." FED. R. CIV. P. 22 Advisory Committee Note. No matter what decision the Secretary makes, there will be winners and losers. In such a circumstance, I believe that it is simply inappropriate to say that the pro-veteran character of the veterans benefits system requires the Secretary to notify each party as to how to defeat the other's assertion of entitlement and then take up the role as neutral arbiter as to which party should prevail. In any NSLI decision, the obvious conflict of interest is very likely to lead to the perception that the outcome of the Secretary's decision was tainted because the Secretary provided better advice to the party who won. Such a result would unfairly undermine the Secretary's reputation as fair and neutral administrator of Title 38. I have strong doubts that such a result is required or desired.

### B. The Plain Language of 38 U.S.C. § 5103(a)

Starting with the plain language of the statute, 38 U.S.C. § 5103(a) states: "Upon receipt of a complete or substantially complete application, the Secretary shall notify the claimant and the claimant's representative, if any, of any information, and any medical or lay evidence, not previously provided to the Secretary that is necessary to substantiate the claim." As to this language, the Secretary argues that a person seeking the proceeds of an NSLI policy is not a "claimant" because the proceeds are not a "benefit." Although the majority makes a plausible case for the opposite result, I tend to agree with the Secretary's position.

Rather than rehash this argument, I focus on the fact that the plain language of title 38 presents additional problems with the majority's position that a dispute over NSLI proceeds is a "claim" for benefits. First, the notice requirement is introduced with a key timing clause. The

19

required notice must be provided "[u]pon receipt of a complete or substantially complete application." In *Locklear v. Nicholson*, 20 Vet.App. 410, 415 (2006), the Court recognized that this timing requirement was crucial to understanding the intended scope of VCAA notice. Accordingly, the Court ruled that section 5103(a) requires only a single, initial notice; not continuous mini-adjudications in the guise of notice. However, the majority's conclusion amounts to a holding that multiple VCAA notices are required. The appellant in this case did not submit the "claim" that started the adjudication to award the NSLI proceeds at issue. That "claim" was submitted by the intervenor. Although the VCAA was not in effect at the time that the initial "claim" was filed, the majority opinion seems to require VCAA notice be issued not just upon receipt of the initial "claim," but also whenever a new intervenor becomes involved. This is difficult to square with the timing language of the VCAA.

I also note that 38 U.S.C. § 5103(a) has no clause limiting it to a particular forum. Unlike the traditional nonadversarial claims that the Secretary adjudicates, disputes over NSLI proceeds may also be brought in Federal district court, a distinctly adversarial forum. *See* 38 U.S.C. § 1984 (granting jurisdiction to Federal district courts); *Young v. Derwinski*, 1 Vet.App. 70, 72 (1990) (holding that section 1984 jurisdiction is not exclusive). That statute also refers to "claims" for NSLI benefits. *Id.* Based on the plain-language analysis used by the majority, it would appear that the Secretary is also required to provide VCAA notice to NSLI proceeds "claimants" in Federal district court. It seems quite doubtful to me that Congress intended to change the rules of procedure in federal district court when it enacted the VCAA. Actions in Federal district court over interpleaded funds are adversarial and in that forum licenced counsel are presumed competent to represent their client's interests.

Furthermore, applying the plain-language analysis used by the majority to other provisions in title 38 leads to highly suspect results. If the majority's analysis is correct, then it would appear that 38 U.S.C. § 5108 applies to NSLI "claims." That provision provides: "If new and material evidence is presented or secured with respect to a claim which has been disallowed, the Secretary shall reopen the claim and review the former disposition of the claim." Given the majority's conclusion that a dispute over NSLI proceeds is a "claim" within the meaning of chapter 51 of title 38, then the use of that word in section 5108 means that a decision by the Secretary on an NSLI "claim" can be reopened at any time based on the submission of new and material evidence so long

as one disappointed claimant lives.  If the Secretary changes the outcome on reopening this "claim," would he have to seek disgorgement from the original beneficiaries?  I have very serious doubts that Congress intended to extend the extremely loose level of finality appropriate for nonadversarial proceedings to an adversarial proceeding like this one even if the plain language of the statute suggests such an outcome.  *See also* 38 U.S.C. §§ 5109A, 7111 (permitting decisions of the Secretary to be revised at any time upon showing clear and unmistakable error).  It is unfortunate that even after 12 years of litigation (so far) the intervenor here will still not have any finality.  It is more unfortunate that whoever prevails on remand must still be concerned about the finality of the award even decades after the proceeds are received.

For these reasons, I do not believe that the majority's conclusion that the plain language of the statute is controlling is based on an examination of the "whole law, and its object and policy." To fairly conclude that a dispute over NSLI proceeds is a "claim" within the meaning of chapter 51 of title 38, the conclusion should be based on more than just the language of one section.  Given the breadth of provisions that use the word "claim," a broader view is required before attaching that word to the dispute here.

## C.  The Legislative History of 38 U.S.C. § 5103

Even accepting that the plain language of the statute requires the result reached, I believe there is at least a colorable issue of whether the use of the word "subsection" in 38 U.S.C. § 5103(b)(2) is a drafting error.  As the majority opinion admits, even where the language of the statute is found to be unambiguous, the Court must still analyze whether the apparent result ""will produce a result demonstrably at odds with the intention of its drafters.""" *Ante* at 7 (quoting *Gardner v. Derwinski*, 1 Vet.App. 584, 586-87 (1991) (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564 (1982))).  Although, the majority speculates how Congress would have phrased 38 U.S.C. § 5103(a) if it had intended a different result, it does not actually look at how that provision was drafted or at the expressed intent in the legislative history.

Prior to the VCAA, 38 U.S.C. § 5103(a) (1991) required the Secretary to inform claimants of the evidence necessary to complete an incomplete application.  Section 5103(b) specifically provided that "[t]his *section* shall not apply to any application or claim for Government life insurance benefits." (emphasis added).  These provisions were identical to the 1958 version of 38 U.S.C. § 3003 (renumbered in 1991).  Hence, while the present version of 38 U.S.C. § 5103 appears

to state that subsection (a) applies to Government life insurance benefits while subsection (b) does not, *no part* of the pre-VCAA version section 5103 applied to Government life insurance benefits.

Turning to the history of the VCAA, the change from "section" to "subsection" occurred in the middle of the drafting process when two different proposals were merged. In July 2000, when the House of Representatives proposed H.R. 4864, 106th Cong. (2000), it continued to use the word "section" in the new version of section 5103. H.R. 4864 proposed that section 5102 deal with incomplete applications, as well as VA's duty to notify of additional information, lay and medical evidence, necessary to substantiate the claim. Subsection (d) of 5102 was entitled "Inapplicability to Certain Benefits" and maintained the identical language to the 1991 and 1958 versions, i.e., "this *section* shall not apply to any application or claim for Government life insurance benefits." The Senate version of the VCAA, section 101 of S.1810, 106th Cong. (2000), did not address any duty to notify claimants. The Senate's sole concern was the duty to assist in developing evidence. To summarize, the House bill contained a duty to notify that explicitly did not apply to Government life insurance benefits while the Senate bill had no duty to notify at all.

The Senate and House Committees on Veteran's Affairs produced a compromise version to reconcile the two bills. The compromise bill divided the House's proposed section 5102 (a) through (d) into sections 5102 and 5103. Section 5102 retained subsections (a) and (b). The new 5103(a) expanded on the duty to notify and took on what were subsections (c) and (d) of H.R. 4894. Without any explanation, the word "section" was converted to "subsection." H.R. 9912, 106th Cong. (2000). In other words, despite the fact that the prior version of section 5103 explicitly did not apply to Government life insurance benefits and the fact that neither of the original bills contained a duty to notify that applied to Government life insurance benefits, when the proposals merged during the reorganization of the two bills being combined, that duty was suddenly created when the word "section" was changed to "subsection."

The legislative history does not support the proposition that this change was the result of any intentional decision to expand the duty to notify proposed by the original House bill. Nothing in the history of either original bill suggests that anyone ever expressed a belief that the originally proposed duty to notify should be expanded to include Government life insurance benefits. Moreover, nothing in the statements explaining the merger of the two proposals acknowledges a change in the scope of the proposed duty to notify, much less provides a rationale for expanding the

22

duty. Senator Specter presented the "compromise agreement" to the Senate, Amendment No. 4189, and stated in relevant part: "The Senate and House committees have now reached . . . an agreement and have reconciled the differences between the Senate- and House-passed provisions. Those differences–which are, principally matters of tone and emphasis, *not–substance*–are contained in the proposed amendment to H.R. 4864 . . . ." 146 CONG. REC. S9205 (Sept. 25, 2000) (emphasis added). Representative Stump provided the following relevant statements in his statement to the House introducing the compromise agreement:

> As revised section 5102 would contain almost all of existing sections 5102 and 5103. . . . Subsections (c) and (d) of proposed section 5102 *are identical* to existing sections (a) and (b) of existing subsection 5103. . . . Proposed section 5102(b) clarifies the Secretary's obligation to send notices to the claimant . . . as to information the claimant must submit to complete the application. It would also require the Secretary to notify the claimant . . . of any additional information and medical and lay evidence necessary to substantiate the claim.

146 CONG. REC. H9914 (Oct. 17, 2000) (emphasis added). By referring to the final version as "identical" to the duty to notify originally proposed in the House, Representative Stump strongly indicates that the reorganization was not intended to expand the duty to notify beyond the version originally proposed.

> Furthermore, Representative Stump also stated in discussing the compromise agreement:

> The compromise version of revised section 5103 . . . *substantially maintains* the current provisions of section 5103. However, it renames the title of the section . . . [and] enhances the notice the Secretary is now required to provide to a claimant regarding information that is necessary to complete the application. . . . The compromise agreement also *maintains* the language in current section 5103 relating to time limits, but expands that language to include "information or evidence." It is not the Committee's purpose to modify the historical application of this provision . . . ."

*Id.* (emphasis added). Again, his statements suggest that the compromise "maintained" the originally proposed duty to notify; not that it expanded that duty.

Despite the substantial questions raised by this history, the majority does not even discuss it or entertain the possibility that it is a mere drafting error that 38 U.S.C. § 5103(b)(2) says "subsection" instead of "section." I recognize and strongly agree with the Federal Circuit's statement that it takes "an extraordinarily strong showing of clear legislative intent in order to convince us that Congress means other than what it ultimately said." *Gardner v. Brown*, 5 F.3d 1456, 1460 (Fed. Cir.

23

1993); *see Tropf v. Nicholson*, 20 Vet.App. 317, 321 n.1 (2006) ("Without standard word meanings and rules of construction, neither Congress nor the Secretary can know how to write authorities in a way that conveys their intent and no practitioner or–more importantly–veteran can rely on a statute or regulation to mean what it appears to say."). However, in this case, the available material necessitates a more comprehensive analysis than the majority undertakes.

### III. THE CONTENT OF VCAA NOTICE ON NSLI CLAIMS

My final concern with the majority opinion is that it does not adequately indicate what would be acceptable VCAA notice in this case. Although the majority decision states: "nothing in the record relied upon by the Board indicates that Ms. Gordon was ever adequately informed of what evidence was necessary to substantiate her NSLI beneficiary claim," *Ante* at 14, it does not elaborate on what would be adequate notice in this case. In *Kent v. Nicholson*, 20 Vet.App. 1, 9-10 (2006), the Court made clear that adequate VCAA notice requires the Secretary to conduct a basic review of the status of the claim to determine what propositions must be substantiated. As to the appellant here it would seem that adequate VCAA notice would require the Secretary to see what the original "claimant" had submitted and inform the new "claimant" how to disprove the initial claim. Furthermore, if we assume that in future cases the Secretary will supply prompt VCAA notice, then it would appear that intervenors will generally have the advantage in that they should receive notice that may consider what the initial claimant submitted and how to rebut it.

This raises another question ignored by the majority. What does the Secretary need to do to provide adequate VCAA notice to Ms. Samargin? Under the majority's analysis, both the appellant and the intervenor are "claimants." Yet, the majority does not consider whether Ms. Samargin received adequate VCAA notice. Assuming she has not yet received adequate notice, it would appear that any notice supplied to her at this point would be focused on how to disprove the proposition that the veteran performed an overt act to effectuate his intent. Or perhaps the majority thinks that she is not entitled to notice because, as the current the prevailing party, her claim has been substantiated. *See Dingess v. Nicholson*, 19 Vet.App. 473, 491 (2006). Of course, this raises the question of whether prevailing below amounts to substantiation of the claim where the merits are still being appealed. Would the logic of *Dingess* apply to a claim that was "substantiated" at the time the VCAA was passed but became unsubstantiated thereafter? Perhaps the Court will be faced with this problem if the appellant prevails on remand. I would also note that it appears from the

24

record that, because this dispute has continued for 12 years, three of the four children involved are no longer minors. R. at 85, 89. This raises the question of whether any of them would require VCAA notice and whether notice would still be required for Ms. Gordon and Ms. Samargin.

Regardless of the particular result on remand, I fear that the lack of guidance provided by this opinion will mean that the fourth time this dispute is appealed to the Court, the arguments raised will again be procedural.

## IV. CONCLUSION

Ultimately, I believe that the majority's decision to expand the scope of the VCAA to include adversarial proceedings is insufficiently justified and raises many more concerns than are acknowledged. I also believe that the Board's decision can be affirmed without even ruling upon this issue. However, assuming that the question were squarely presented, I do not see how it could be properly addressed without taking a broader look at the VCAA and the case that inspired it, *Morton*. The nonadversarial proceedings at issue in *Morton* are simply not comparable to the inherently adversarial proceeding on appeal here. Nonetheless, if there is one aspect of *Morton* applicable here, then it would be the conclusion. After reaching the result in *Morton*, the Court ended the opinion by observing that "it is possible that after evaluating such considerations as fairness, equity, and the personnel, facility, and financial expenditures which would be required, Congress might well opt" to reverse the outcome reached. 12 Vet.App. at 485-86. Similarly, the outcome reached here is so inconsistent with the unambiguous intent of the VCAA that it would not be unreasonable for the Court to suggest to Congress that it may want to revise the statute to reverse this decision. Accordingly, I respectfully dissent from the majority opinion.